$$\frac{1}{82} \quad \frac{9}{247}$$
$$\frac{1}{124} \quad \frac{9}{163}$$
$$\frac{1}{143} \quad \frac{9}{219}$$

---

### The People *vs.* Smith, *et al.*

It is too late to raise an objection to an affidavit or warrant of arrest on a criminal charge, after the examination of the prisoner has been had, and it appears that there is probable cause to suppose that he is guilty of felony, and an order of commitment has been made by the committing magistrate. So held upon an application to discharge a prisoner on *habeas corpus.*

If it appear on the examination of a person before a committing magistrate, that the prisoner is guilty of felony, although different from that specified in the warrant of arrest, it is the duty of the officer to commit the prisoner for trial, for the offence of which he appears to be guilty.

If an order of commitment be sufficient in substance, it will be held good on *habeas corpus*, although it contain more than is necessary to be stated therein. The unnecessary matter will be regarded as surplusage.

Courts will take judicial notice of the territorial extent of the jurisdiction and sovereignty, exercised *de facto* by their own government, and of the local divisions of the country into states, counties, cities, towns, &c.

Judges of First Instance have jurisdiction to act as examining and committing magistrates.

The justices of this court and the district judges, being made by the constitution of the state conservators of the peace, are *ex vi termini*, empowered to act in the apprehension and commitment of offenders. *Per* Bennett, J.

An affidavit made upon information merely, is entitled to but little weight in any legal proceeding. *Per* Bennett, J.

Upon a return to a writ of *habeas corpus* it is proper for the court to look into the depositions taken before the committing magistrate, in order to ascertain whether there is probable cause to suppose that a felony has been committed by the prisoner.

Where it appeared on the return to a writ of *habeas corpus* that there was reasonable ground to believe that the prisoners were guilty of burning certain Indian lodges in the Nappa Valley, and of killing several Indians, and perpetrating other outrages, they were, nevertheless, admitted to bail, on the grounds solely that the district courts had not as yet been organized, nor their terms fixed, nor the judges appointed, and that there was no secure place in which the prisoners could be kept until they could be brought to trial. *It seems*, had not these reasons existed, the prisoners would have been remanded to the custody of the sheriff.

THE facts are sufficiently stated in the opinion of the court. The cause was argued by

*C. D. Semple* and *John B. Weller*, for the applicants, and by

*C. J. C. Kewen*, (attorney general,) for the people.

*By the Court.* BENNETT, J. This case comes up on the petition of the defendants to be discharged from the custody of the sheriff of the district of Sonoma, under a writ of *habeas corpus* heretofore issued by this court. The return of the sheriff shows that the petitioners are detained by him by virtue of an order of the judge of First Instance of the district of Sonoma, and that such order was made upon the return of a warrant of arrest against the defendants, charging them with the commission of various felonious acts. Accompanying the return of the sheriff is also to be found a large amount of testimony taken on the examination, going to show that several Indians in the Nappa Valley were shot on the 27th day of February last, their lodges burned, and a considerable quantity of wheat, barley, and other property destroyed, and tending to fix the perpetration of these acts upon the petitioners.

It is claimed by the counsel for the accused : 1st. That the affidavit upon which the warrant of arrest was issued, is defective. 2d. That the order of commitment is irregular and illegal. 3d. That it does not appear that any offence has been committed within the state of California. And 4th. That a judge of First Instance cannot exercise the powers, which the officer has, in this case, assumed. These are in substance the grounds

The People *v.* Smith.

upon which it is claimed that the prisoners should be discharged.

First. It is claimed that the affidavit in pursuance of which the warrant was issued is defective, because it is alleged to be upon information merely. If this were so, we should feel disposed to regard it as of but little value, for an affidavit which states no fact within the *knowledge* of the person making it, can be of but little weight in any legal proceeding. But we understand the affidavit in question to set forth in positive terms as within the knowledge of the deponent, the commission of the offences charged therein, and to proceed upon information as to the *names* only of the persons who were guilty of the perpetration of them. We think that the fact upon which the argument of counsel is based, does not exist; but even if it did, we are of opinion that it is now too late to raise the objection. The preliminary evidence upon an application for a warrant of arrest may be either by the affidavit of some person cognizant of the facts, or by his examination under oath taken by the officer; and is for the purpose of satisfying the person to whom the application is made, that there is reason to believe that a felony or other crime has been actually committed, without which no warrant should issue; as also to prove the cause and probability of suspecting the party against whom the warrant is prayed. (4 *Stephen's Comm.* 356.) If in pursuance of preliminary proof charging a particular offence a warrant be issued, and the accused be brought before the magistrate, and upon examination it be found that he has been guilty of some felonious act, though different from that charged, it is nevertheless the duty of the examining officer to commit him for trial for the offence which it thus appears there is probable cause to suppose he has committed. The only period at which the defendant can avail himself of any defect in the affidavit, is previous to the examination and final order of commitment. In this case, no defects in the affidavit would authorize a discharge of the prisoner.

Secondly. The objection to the several orders of commitment is, that it is required by them that the defendants stand committed to the custody of the sheriff " till discharged by the

"judge of the district court of said district of Sonoma at the "next first term of said court to be held in and for said district, "by virtue and in pursuance of the statute laws now passed or "which may hereafter be passed by the legislature of the state "now in session." It is claimed that this authorizes an indefinite imprisonment, inasmuch as the district courts are not yet organized, and the district judges not yet appointed. The order, it is true, might have been drawn up with a greater degree of formality and technical accuracy. It would have been better expressed, if it had authorized the commitment of the defendants until discharged by due course of law. At the same time, we are of opinion that the order is substantially sufficient, and can in reality work no prejudice to the prisoners; for their case will unquestionably be laid before the first grand jury, which will meet in Sonoma, and will then be disposed of. It is in effect an order of commitment for trial, authorizing the detention of the defendants until their cases can be presented before a tribunal regularly constituted, with prescribed powers, proceeding according to an established practice, and competent to pronounce a final judgment either of acquittal or conviction. In the midst of the doubts as to the proper limits of the jurisdiction of courts of First Instance, and the want of regularity in proceedings before them, owing to their powers and practice not being sufficiently defined by law, we cannot say that the committing officer acted illegally, or unwisely, or to the prejudice of the defendants, in requiring, in his order, their commitment until the establishment of the new system and the organization of the new courts. The addition to the order of the clause in relation to the laws under which the defendants may be tried by the district court, cannot be considered as either enlarging or diminishing the power or jurisdiction of the district court. It should be regarded as mere surplusage, which can, in no respect, vitiate—and striking this out, we have simply an order committing the defendants for trial at the next district court.

Thirdly. It appears from the order of commitment that the offence charged was committed in " Nappa Valley at and about " the ranch of Henry Fowler and William Hargrave in said val-

" ley." It is not necessary that it should be stated that Nappa Valley is in the state of California. Courts take judicial notice of the territorial extent of the jurisdiction and sovereignty, exercised *de facto* by their own government; and of the local divisions of their country, as into states, provinces, counties, cities, towns, or the like, so far as political government is concerned or affected. (*Greenleaf on Ev.* 8.) And we recognize judicially that Nappa Valley is embraced within the territorial limits of this state, the same as we should, that San Francisco is included within its boundaries, if an offence were charged to have been committed there.

Fourthly. It is claimed that a judge of First Instance cannot act as an examining and committing officer. We think otherwise. Judges of First Instance are invested with a criminal as well as a civil jurisdiction, (*Art.* 2, § 2, *of part* 2, *of law of May* 23, 1837, *and art.* 9, *of same law,*) and are empowered not only to try criminal causes, but also to act in the preliminary proceedings of arrest and commitment for trial. This power they have uniformly exercised since the acquisition of California by the United States government; and we deem it a part of their duties as conservators of the peace in the districts over which their jurisdiction extends. It was conceded upon the argument that they were conservators of the peace, but it was contended that the power of such officers does not extend to the arrest and commitment of persons charged with the commission of crimes. Before the institution of the office of justice of the peace in England, the public order was maintained by officers who bore the name of conservators of the peace, (4 *Stephen's Comm.* 37, 38;) and they were empowered to preserve the peace, to suppress riots and affrays, to take securities for the peace, and to *apprehend and commit* felons and other inferior criminals. (*Id.* 43.) The same power is conferred upon a variety of officers in England and the United States by simply declaring them by statute to be conservators of the peace; and the constitution of this state confers the same authority in the same terms, upon the justices of this court and the district judges. Being conservators of the peace, the judges of First

Instance may legally act in the apprehension and commitment of offenders against the law; and the proceedings before us are not invalid upon the ground of want of jurisdiction in the officer who made the commitment.

There are in addition to the views already taken of the case, reasons which render a discharge of the prisoners improper. The depositions taken before the judge of First Instance have been returned, and we think that enough appears in them to require that the defendants should be put upon their trial. It is a general rule, that upon application to bail or discharge upon *habeas corpus*, the court will look into the depositions, and, without regarding the regularity or irregularity of the commitment, will remand, discharge or bail the prisoner, according to the circumstances of the case. The court, in such case, pronounces no judgment, whether the facts amount to felony or not, but merely whether enough is charged to justify a detainer of the prisoner, and putting him upon his trial. Even if the commitment be regular, the court will look into the depositions, to see if there be a sufficient ground laid to detain the party in custody, and if there be not, will discharge or bail him. So, on the other hand, if the warrant of commitment be informal, they will not discharge or bail the prisoner, without first looking into the depositions, if any be presented, to see whether there is sufficient evidence to detain him, and if the matter appear to be such as would require his detention, or his finding sureties, he will be bailed or committed accordingly, and not discharged. (1 *Chitty Crim. Law*, 92, 93, 94.)

For these reasons, the court cannot grant the prayer of the petitioners for their discharge. If the district courts were fully organized, and their terms prescribed and known, we should, perhaps, not deem it within the proper exercise of a sound discretion to bail them; but considering the want of definite and well understood laws regulating proceedings in the existing courts of First Instance, and the uncertainty as to the time when the district courts will be ready to proceed with business, superadded to the fact that there is no jail or prison in which prisoners can be kept with security, we feel disposed to order their

release upon bail. The defendants must, therefore, enter into a joint recognizance with at least two good and sufficient sureties in the sum of ten thousand dollars, that they will appear and answer to any indictment which may be presented by the grand jury of the district of Sonoma for the offences charged against them in the several orders of commitment, from which they have petitioned to be discharged; or either of them may enter into a recognizance in the sum of three thousand dollars, with at least one good and sufficient surety, to the same effect. In either case the sureties must be approved by the judge of First Instance of the district of Sonoma, or by one of the justices of this court, upon satisfactory proof that they are each worth double the amount specified in the recognizance over and above all debts, claims, and demands. Upon entering into such recognizance, either of the prisoners will be released from further detention. In case of failure to enter into such recognizance, they must be remanded to the custody of the sheriff of Sonoma, to be by him kept until discharged by due course of law.