## HENRY CASSADY v. STATE.

No. A-3846—Opinion Filed April 25, 1921.

(197 Pac. 171.)

(Syllabus.)

1.    **PERJURY—False Affidavits on Information and Belief.** The wilful making of an affidavit to facts material in any proceeding in which an oath may be administered, known by the deponent to be false, although stated on information and belief, constitutes "perjury."

2.    **SAME—Definition of Perjury.** Perjury consists in swearing falsely, willfully, and corruptly, contrary to the belief of the witness, not in swearing rashly and inconsiderately, according to his belief.

3.    **WITNESSES—Cross-Examination—Unfriendly Attitude.** It is permissible, on cross-examination of a witness for the state, to show his malice or unfriendly attitude towards the defendant or any special interest he may have in the prosecution, as affecting his credibility, and this is so even though the subject of inquiry may be embarrassing or humiliating to the witness so interrogated.

*Appeal from District Court, Logan County;*

*Arthur R. Swank, Judge.*

Henry Cassady was convicted of perjury, and he appeals.    Affirmed.

*George W. Partridge,* for plaintiff in error.

*S. P. Freeling,* Atty Gen., for the state.

BESSEY, J.    On March 15, 1920, an information was filed in the district court of Logan county against Henry Cassady, plaintiff in error, hereinafter referred to as defendant, charging him with perjury in the third degree, by making false affidavit on March 12, 1920, to procure a

marriage license. There was a verdict of guilty and judgment and sentence on April 5, 1920, imposing a penalty of two years' confinement in the state penitentiary.

The record shows that about 18 months prior to the date of the procuring of this marriage license the defendant lived near Tryon in Lincoln county and was from time to time employed as a farm laborer by Mrs. Stella Rowe, residing in the same community, who, with other members of her family, had moved to Guthrie a short time before this trial, that Violet Rowe was the daughter of Mrs. Stella Rowe, and that on March 12, 1920, the defendant made application for and procured a marriage license in Logan county to marry Violet Rowe, and that they, without the knowledge or consent of the mother, were married the same day by the county judge at Guthrie.

The evidence on the part of the state shows that at this time the girl was but 12 years of age, and that the defendant, from what had been told him and his intimate association with the girl and her family, knew or had good reason to know that she was under the age of 18 years; that to procure the marriage license he made an affidavit in which it was stated, on information and belief, that the girl was 18 years old. The mother and the twin sister, Veda Rowe, testified as to the relations and frequent association of the parties during all of this period.

It appears from the record that Mrs. Rowe, for a portion of the time, was separated from her husband, and that the defendant while in the employment of Mrs. Rowe became her sweetheart; and that later he transferred his affections to the daughter, resulting in the elopement and marriage.

The defendant claimed that the girl told him that she was 18 years old, and that upon this information and from her physical development and appearance he believed that she was that old, and made the affidavit on information and belief, in good faith. Upon the question of his knowledge and belief as to her age there was testimony supporting the theory of the state, and likewise testimony supporting the claim of the defendant.

The defendant urges in his brief that, because the affidavit was made upon information and belief, there could be no perjury predicated upon it. The gist of the offense of perjury is the wilful making of a false statement, under oath, of any facts known by the affiant to be false. So, then, if a person makes an affidavit he knows is false, although stated to be on information and belief, he is guilty of perjury. When the information and proof supporting it, as in this case, negatives not only the truth of the facts stated under oath, but also the truth of his information and belief, it is sufficient. 21 R. C. L. 255; *State v. Rupp,* 96 Kan. 446. 151 Pac. 1111, L. R. A. 1916B, 848; 25 L. R. A. (N. S.) notes, 659.

In this case there is proof tending to show that the defendant knew that the girl was under eighteen years of age when he made the affidavit. If that be true, he made oath to a false statement when he deposed that he believed she was over the age of 18. The rule applicable to cases of this character is well stated in the case of *Pilgrim v. State,* 3 Okla. Cr. 49, 104 Pac. 383, and reiterated in the case of *Mathes v. State,* 15 Okla. Cr. 382, 177 Pac. 120, as follows:

"Perjury consists in swearing wilfully and corruptly, contrary to the belief of the witness, and not in swearing

rashly and inconsiderately according to his belief."

The record shows that before the defendant married the daughter the mother of the girl and the defendant were sweethearts, and that in this triangular love affair the mother was the woman scorned. The defendant, on cross-examination of the mother, sought to show this relationship, as affecting her feeling toward the defendant and her credibility as a witness against him. The court, in the following manner, refused to permit such showing:

"Q. Then he worked for you on the farm? A. Off and on; yes.

"Q. Well, he worked for you while Mr. Rowe was gone? A. That was when we was separated.

"Q. When you were separated, Mr. Rowe was gone, and Mr. Cassady would come and work for you? A. We was divorced and separated.

"Q. When were you married the last time to Rowe?

"By Mr. Dinwiddie: We object as immaterial.

"By the Court: Objection sustained.

"Q. As a matter of fact, you are in love with Cassady yourself and wanted to marry him, didn't you?

"By Mr. Dinwiddie: Object as immaterial and incompetent, neither tending to prove or disprove the issue in this case.

"By the Court: Objection sustained. I don't know, I will let her answer that.

"Q. That was true, wasn't it? A. No, sir; not at present.

"By the Court: Ask her again.

"Q. You were in love with Cassady and wanted to marry him yourself? A. When?

"Q. Right recently. A. No, sir.

"Q. Didn't you write him a letter on the 12th day of August?

"By Mr. Dinwiddie: Objected to as immaterial.

"By the Court: Objection sustained. Exception allowed.

"Q. I hand you Defendant's Exhibit I and ask you to look at that letter and see if you didn't write that letter to Mr. Cassady.

"By Mr. Dinwiddie: I object, if the court please, for the reason that it is immaterial and incompetent unless it tends to prove an issue in the case.

"By Mr. Partridge: It goes to affect the credibility of the witness.

"By the Court: Objection sustained. Exception allowed.

"By Mr. Partridge: I want to make an offer. The defendant, Cassady, offers to introduce in evidence a letter written by the witness—

"By the Court: You have the letter identified and make your offer in the proper way.

"By Mr. Partridge: We offer Exhibit I in evidence, for the purpose of affecting the credibility of the witness.

"By Mr. Dinwiddie: To which the state objects as incompetent, irrelevant, and immaterial, neither tending to prove or disprove any issue in this case.

"By the Court: Objection sustained. Exception allowed.

The letter, defendant's Exhibit I, so offered and refused admission in the record, is in words, letters, and figures as follows:

"Guthrie, Oklahoma.

"Dear Henry, I received your letter I was glad to get it if it was little Henry i shore felt sad after you left I stood & watched you till you got clear out of site and you never even looked back once, and when i asked you how you wanted me to come back you said O just eny way you want to rite and tell me when you got Home and if it was dark Have you trimed the orchard yet Guy hant got home yet and Maud is just bucking.

2

Well, Dear little friend you Are not the only lonesome one, but when i get lonesome i alys think of How i used to bage you to marry me and you allys made some excust Veda said you told her you would of married me but for one thing but woulden say what while you miss us I no but you will somme for get aspecaly me before long I would love to be with you at night you know i was alys Happy with you Henry i am riting this in the dark dont know wether you can read it or not Veda taken her first music lesson today on the Piano it has been so lonesome I have just walked the yard all day till i am so tired and sleepy i will hafto quit and go to bed i will be out there before long so stay at home close I may come by myself.

"from one who loves you best of all on earth

"Mama."

At this stage of the proceeding the defendant was entitled to have this evidence go to the jury, to show the witness's interest in the prosecution and her feelings and possible malice toward the defendant, as affecting her credilibity. However, upon the defendant's own testimony and the testimony of the twin sister, introduced later, even though the testimony of the mother be eliminated entirely, there was sufficient evidence before the jury to warrant a

finding that the defendant knew when he made the application for a marriage license that Violet Rowe was under the age of 18 years. Under these circumstances, applying the provision of section 6005 of our Statutes, defining harmless error the refusal of the court to permit the defendant to so discredit the testimony of the mother should not operate to reverse this case.

Complaint is made that two instructions offered by the defendant were refused by the court. The instructions refused were well stated, but the court in the instructions given traversed the same ground and fully and correctly stated the law applicable to this case, and on this point the defendant has no just reason for complaint.

For the reasons herein stated, the judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.