[Crim. No. 250. Fourth Appellate District.—July 28, 1933.]

## THE PEOPLE, Respondent, v. JOSEPH P. BAILLIE, Appellant.

Joseph L. Fainer and R. E. Parsons for Appellant.

U. S. Webb, Attorney-General, William F. Cleary, Deputy Attorney-General, Buron Fitts, District Attorney, and Arthur Veitch and William Brayton, Deputies District Attorney, for Respondent.

TURRENTINE, J., *pro tem.*—The defendant and a number of other persons, including Ralph Sheldon and Jimmie

Doolen, were jointly charged by indictment with the crime of kidnaping for the purpose of extortion and robbery. Sheldon and others were convicted in an earlier trial. The charge against Doolen, an admitted accomplice, was dismissed so that he might testify on behalf of the prosecution. After trial a verdict of guilty resulted and this is an appeal from the judgment of conviction and from the order denying defendant's motion for a new trial.

Defendant concedes there was sufficient evidence to establish the fact that a Mr. Caress, his wife, and their Japanese servant had been kidnaped and held for ransom. He contends, however, that there was insufficient evidence, independent of the accomplice Doolen, to connect or tend to connect him with the offense charged.

It appears that on the night of December 20, 1930, Caress, his wife and the Japanese servant were kidnaped and taken to a house, where they were kept prisoners, and a demand was made on Mr. Caress for $50,000 ransom. He drew four checks and handed them to one of the persons who held them captive. He then suggested one Les Breuneman as a person likely to assist the kidnapers in cashing the checks and talked to Breuneman over the phone, requesting him to try and cash the checks at one of the gambling ships off Long Beach and arranged an appointment for Breuneman to meet one or more of the kidnapers. This was late on the afternoon of December 21, 1930. Later that same day a Dodge sedan carrying four passengers came to a stop on a road near one of the docks in the vicinity of Long Beach. Two police officers in a patrol car upon seeing the automobile parked at such a place pulled up alongside and began questioning the occupants. During the course of the questioning someone started shooting and a somewhat extended pistol duel between the occupants of the car and the officers ensued. Two of the occupants of the sedan, namely, Ralph Sheldon, who gave his name as Ralph Sherman, and Les Breuneman were captured but the other two escaped. Upon being searched it was found that Les Breuneman was in possession of the four checks before referred to. The witness Doolen gave a detailed account of the defendant's participation in the kidnaping.

The question presented is what evidence, independent of the witness Doolen, connects or tends to connect

the defendant with the kidnaping? Evidence of the following facts, independent of, and not dependent upon, the testimony of witness Doolen in any way, was before the jury: (a) The automobile in which the four persons were seated when the police officers started to question them in Long Beach was registered in the name of defendant Joseph P. Baillie. (b) The ignition key used in the sedan was attached to a key case, and one of the other keys in this case fitted the lock on the front door of the house in which Caress, his wife and their Japanese servant were then being held prisoners. The lock was in evidence and the key was actually used in court to lock and unlock it. (c) The automobile was taken to a garage in Long Beach but was never claimed by the defendant. Near the end of July, 1931, the wife of defendant appeared and claimed the car and it was delivered to her. (d) The address on the registration certificate of the sedan was the residence of defendant. On discovering this fact the officers immediately rushed to the house, arriving about midnight, found defendant's wife home and the defendant not at home. (e) The defendant's wife testified, on his behalf, stating he had been sick in bed with the flu and asthma for five days preceding December 20th; that he had stayed home all the night of the 20th and the morning of the 21st; that on Sunday, the 21st, he had gone out to get some air; that when the officers arrived about midnight of the 21st and asked for her husband, she thought it was he who was seeking admittance. All that night and for several days thereafter police officers remained at the Baillie home continuously, but defendant did not put in an appearance. (f) During the latter part of December and in January, defendant was seen working on a ranch which belonged to Ralph Sheldon, one of the defendants. (g) When an investigation was made of the house in which Caress, his wife and the Japanese servant had been held prisoners, there was discovered in the fireplace a piece of burned paper which consisted of a duplicate tag or receipt issued by a shoe company at its place of business in Hollywood, located about three or four blocks from the residence of defendant, and on which ticket was written the name "Bailey". (h) The defendant was apprehended in Balboa, Panama Canal Zone and was extradited. On the trip back he stated to the police officers that he had traveled from Los

Angeles to New Orleans by bus, had then gone to Belize, British Honduras, and after a stay there had gone to Panama City and then to Balboa.

We think this evidence, standing alone, and in no way dependent upon the testimony of the accomplice Doolen, is sufficient in itself to connect or tend to connect the defendant with the commission of the crime and is squarely within the rule in California, which may be stated as follows: The corroborative evidence required by Penal Code, section 1111, need be neither strong nor convincing; it may be such that if it stood alone it would be entitled to but little weight. It need not extend to all facts and details covered by the statements of the accomplice. It is sufficient if, standing alone, it connects or tends to connect the defendant with the commission of the crime. The courts announced this rule in many cases and have very clearly expressed it as follows: "It has been held that to corroborate an accomplice the evidence need not establish the actual commission of the offense, nor extend to every fact and detail covered by the statements of the accomplice, or to all the elements of the offense, nor prove that the accomplice has told the truth. The corroborative evidence must tend in some slight degree, at least, to implicate the defendant. While it need not be strong, more is required by way of corroboration than mere suspicion. It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to little weight. It is not necessary to corroborate the accomplice by direct evidence. If the connection of the accused with the alleged crime may be inferred from the corroborating evidence in the case it is sufficient." (*People* v. *Yeager,* 194 Cal. 452, 473 [229 Pac. 40, 49].)

■ The defendant urges that the trial court committed reversible error when it refused to allow him to make a plea of once in jeopardy. The circumstances surrounding this contention are as follows: After a jury had been impaneled to try the case and the district attorney had made his opening statement, a juror stated that the statement of the district attorney had recalled certain matters to her mind which made her feel that she could not act as a fair and unbiased juror. When the juror made this statement the following took place in the courtroom:

"The Court: Mr. Fainer (counsel for defendant), what is your pleasure in the matter?

"Mr. Fainer: Your Honor, at this time I make a motion that this trial be declared a mistrial because of the fact that one of the jurors has made the statement after she has been sworn as a juror and the opening statement has revived something she has heard and discussed, and she could not be a fair juror in the matter; so I move at this time that this matter be declared a mistrial.

"The Court: Mr. Baillie, . . .

"Q. You have heard the statement and motion made by your counsel, that the court declare this a mistrial?

"A. Yes, your Honor.

"Q. Is that entirely agreeable to you?

"A. Yes, sir.

"Q. And do you stipulate that the court do order a mistrial?

"A. Yes, your Honor.

"The Court: Mr. District Attorney, is there anything you have to state in the matter?

"Mr. Veitch: We join in the stipulation, and we suggest this: That the stipulation be broadened to the extent that it include this jury, under that order, shall be discharged, and that a new jury shall be impaneled to try the case.

"Mr. Fainer: So stipulated, your Honor.

"The Court: Is that your stipulation, Mr. Baillie?

"Defendant Baillie: Yes, your Honor.

"The Court: You agree to that?

"Defendant Baillie: Yes, your Honor.

"The Court: Very well. For the reasons stated by the juror, Mrs. Lucas, and because of the reasons set forth in the motion of counsel for the defendant, and upon the stipulation of the defendant himself made in open court; likewise upon stipulation of the District Attorney; and good cause appearing therefor to the Court, it is now ordered that a mistrial be had in this case."

The jury was then dismissed and the case reset for trial. When it was called several days later one of the attorneys for the defense asked leave to interpose the additional plea of once in jeopardy. In asking for such permission he stated that he wished to enter such plea because of the dismissal of the first jury sworn in the case without such

jury having reached and rendered a verdict predicated on the proceedings as hereinbefore set forth. The court refused permission to defendant to interpose such plea. With this state of the record we do not see how defendant could claim that he had been once in jeopardy or how his rights were prejudiced by a refusal to permit such claim. It must be borne in mind that all of the facts on which he desired to predicate the plea were admitted and were before the court at the time it refused him the right to make the plea. In the case of *People* v. *Curtis,* 76 Cal. 57 [17 Pac. 941], the defendant moved for a new trial, which was granted, and asked at the new trial to be allowed to plead once in jeopardy and former acquittal. On appeal, the Supreme Court said on page 59: "As the jury was discharged with the consent of the defendant without rendering a verdict, it must be held that there was no jeopardy and no acquittal. Therefore the court did not err in refusing to allow defendant to plead former jeopardy and former acquittal, . . . " *People* v. *Kelly,* 132 Cal. App. 118 [22 Pac. (2d) 760], lays down the rule as follows: "It is equally well settled that where a defendant has consented to the discharge of a jury before a verdict is reached, the plea of once in jeopardy is not available to him." Whatever may be the method employed in the trial court in disposing of such a matter, it certainly cannot be urged as reversible error to deny defendant the right to make a plea of once in jeopardy under the facts as presented by the record in this case.

The claims by defendant that the admission of certain evidence is prejudicial error we think are disposed of by the decision in the case of *People* v. *Frank,* 132 Cal. App. 360 [22 Pac. (2d) 792], which was decided on the same indictment as this case. While the evidence objected to was not identical, the following statement in that case disposes of appellant's contention in this case adversely to him:

"Rulings of the court assigned as error relate to: (a) the admission of testimony concerning the stolen auto; (b) the purchase and delivery of a radio; (c) pistols being carried in a car; (d) conversations between Doolen and Wagner; (e) the burning of stolen clothing and a house; (f) the testimony of Wagner; (g) the testimony of Slaughter, Schack,

Coit, and Mittwer in connection with the Long Beach occurrence.

"While the objections to these different elements of the testimony do not rest upon identical grounds, running strongly through them is the common ground that they have no possible relation to the issues of this case and are introduced by the state to create an atmosphere of general criminality on the part of defendants of crimes unrelated in character to the crime here involved and must have influenced the jury prejudicially against the defendants. An examination of the record as to each and all of these assignments of error indicates that the evidence had fair tendency in every instance to show the relation existing between the defendants, to corroborate the testimony of the accomplice Doolen, and to support the theory of a conspiracy."

The claim of prejudicial misconduct on the part of the district attorney is answered by our holding that the evidence complained of was properly admitted in evidence, for it was on this conduct of the district attorney, in eliciting competent evidence, that the defendant charges him with misconduct.

Judgment and order affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1933.