[Crim. No. 3953. In Bank.—July 7, 1936.]

THE PEOPLE, Respondent, v. GEORGE WALLACE et al., Defendants; H. G. SMITH and ALFRED PAINE, Appellants.

Pierce & Sherwin, Wilbur S. Pierce and Marvin Sherwin for Appellants.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

SHENK, J.—By indictment the defendants, George Wallace, H. G. Smith and Alfred Paine, were charged with the murder, on August 11, 1935, of E. G. Fish, chief of police of North Sacramento. Wallace· was convicted of second

degree murder and has not appealed. Smith and Paine, who were convicted of first degree murder and sentenced to suffer the penalty of death, have appealed from an order denying their motion for a change of venue, from the judgment of conviction, and from an order denying their motion for a new trial.

No contention is made that the evidence is insufficient to support the verdict. The only points urged by the appellants are first, that the court erred to their prejudice in denying their application for a change of place of trial, and, second, that the court prejudicially erred in denying a challenge for cause of a prospective juror.

On August 10, 1935, the defendants left Oakland by automobile owned by Wallace, bound for the location of a mining claim in the vicinity of Allegheny in northern California. In the automobile they had their camping equipment and tools, including a pinch bar. Paine had a pistol which he placed in the pocket of the front door of the car. As they neared North Sacramento shortly after midnight Paine suggested that they obtain a case of beer. The car was stopped about a block from a small grocery store in North Sacramento and Smith and Paine got out of the car. Smith took the pinch bar. Paine took the pistol and told Wallace to keep driving around until they came back. Paine then forcibly entered the store and handed to Smith, who was waiting outside, some loaves of bread, some cigarettes and a case of beer. The two left with the stolen merchandise to meet Wallace and depart in the car. Smith discovered that he had dropped the pinch bar and returned toward the store. On his way back he was stopped and seized by a citizen who resided near by and who called a neighbor to summon the police. Paine returned in search of Smith and demanded that he be released, at the same time discharging his pistol in the ground between the two citizens. Smith was thereupon released and fled with Paine in search of Wallace and the car. Wallace had already aroused the suspicions of a deputy sheriff who had arrested him for questioning. Paine and Smith had not gone far, Paine walking and running about ten feet in advance of Smith, when Chief of Police Fish drove around the corner in his automobile, stopped his car, called to the two men to "Wait a minute, boys", and got out of his car. Smith immediately ran. The officer walked around

the rear of his car and Paine walked toward him on the other side of the car. The officer pointed a flashlight at him and when they were about four feet apart Paine recognized the officer's uniform, shot him with fatal effect in the groin and fled. The victim then fired several shots at the fleeing Paine without effect. Paine caught up with Smith and the two fled on foot toward Roseville. On the way they hid the pistol. After spending a few hours at Roseville they obtained a ride back to Sacramento and went to a depot for the purpose of taking passage to Oakland. At the depot they were arrested by an officer who was searching for them as a result of information gained from questioning Wallace. Both Paine and Smith were questioned by officers and gave their confessions in detail, substantially as above outlined. They were immediately taken by the officers to the state prison at Folsom as a precautionary measure for the protection of the offenders.

Five days after the crime was committed the indictment was returned. On the same day, August 16th, the defendants were arraigned and separate counsel were appointed to represent them. The matter of their pleas was continued to August 19th at which time Wallace and Smith pleaded not guilty. Paine stood mute and a plea of not guilty was entered for him. September 16th was fixed for the time of trial. On August 28th, a motion for a separate trial on behalf of each defendant was made and denied. On September 11th each defendant made a motion for a change of venue on the ground that he could not have a fair and impartial trial in Sacramento County by reason of the bias and prejudice of the citizens of said county against him and his cause. The motion was heard on oral and documentary evidence by way of affidavits.

The showing as to each defendant was the same. The court denied the motions with leave to renew the same "when the proceedings under the impanelment of the jury have progressed far enough to throw further light upon this matter". The trial was commenced on September 16th. The impanelment was completed and the jury was sworn on September 20th; whereupon the motions for change of venue were renewed, based upon the prior showing and on the testimony of the veniremen in the impanelment of the jury. The motions were again denied. On the hearing thereof the

district attorney filed no counter-affidavits and produced no witnesses on behalf of the prosecution. It is therefore urged that the showing was uncontradicted, was amply sufficient to require a change of venue, and that the court abused its discretion in not granting the same. But the record does not justify a reversal on that ground. When the original motions were denied the court recognized that the victim was admittedly a popular public officer of the city of North Sacramento, and that much ill feeling with intemperate statements had been expressed against the confessed perpetrators of the foul deed, but found from the evidence that this feeling was pretty well localized in that community. It appeared from the testimony of a witness produced by the defendants at the hearing on the motion, who was a resident of the city of North Sacramento and well qualified to gauge the sentiment in that community, that while the sentiment of residents in that community was against law violation the general feeling there was that "the proper channels of justice should be followed in every way that was necessary and not beyond". In addition to the foregoing there was testimony of other witnesses, residents of the city of Sacramento, sufficient to raise a conflict in the evidence on the issues presented.

The trial judge expressed himself as entirely free·and in duty bound to order a change of venue if public sentiment in the county were such as to prevent a fair and impartial trial of the defendants therein, and that the condition of the public mind might further be developed at the trial and during efforts to obtain a fair and impartial jury. Final action on the motion was therefore postponed until after the examination of the veniremen. The court was authorized to follow the course taken. (*People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599]; *People* v. *Staples,* 149 Cal. 405 [86 Pac. 886]; *People* v. *Plummer,* 9 Cal. 298.) When the motion was renewed after the jury was selected the defendants offered no evidence on the issue other than had been produced at the original hearing of the motions. Upon such renewal the court had before it the original showing, on which a conflict may well be said to have existed, and the exhaustive examination of veniremen selected for jury service before the crime was committed and drawn from the reservoir of some 70,000 qualified citizens of the county. It is readily conceivable that the slaying of a popular officer while engaged

in the discharge of his official duties and under the circumstances shown would create considerable feeling and resentment in the locality where he was known and admired. But the killing of a popular officer in itself furnishes no ground for the change of venue. (*People* v. *Yeager,* 194 Cal. 452, 482 [229 Pac. 40].)

Applications for change of venue are addressed to the sound discretion of the trial court. (Pen. Code, sec. 1035; *People* v. *Hall,* 220 Cal. 166 [30 Pac. (2d) 23, 996]; *People* v. *Elliott,* 80 Cal. 296 [22 Pac. 207]; *People* v. *Goldenson,* 76 Cal. 328 [19 Pac. 161].) When the court ruled upon the renewed application it had the benefit of the examination of the jurors who had then been impaneled and sworn. The thorough and searching inquiry into the state of mind of the prospective jurors by counsel who ably represented the defendants at the trial discloses that no special difficulty was encountered in securing a jury. There is no indication that the defendants or their counsel were dissatisfied with the jury selected. In view of the record we conclude that the court committed no abuse of discretion in refusing a change of place of trial.

The appellants contend that the court erred in denying their challenge for cause of Estelle M. Wilder, who, when first examined, stated that whatever she had read in the newspapers about the case did not leave such an impression on her mind as would prejudice her against the defendants; that she would be able to discard from her mind any impression that she gained from what she had read. Later on and during the course of a rather extensive examination by counsel for the defendant Wallace, she was asked if it would require evidence to remove impressions she received as to matters she read in the newspapers and which she believed to be the truth. Her answer was, "Yes, it would". Upon further examination undertaken immediately by the court on the same subject her answers were so fair and satisfactory that the court concluded that she had misunderstood the question the answer to which provoked the challenge. Counsel later asked her: "If the prosecution fails to establish beyond a reasonable doubt and to a moral certainty his guilt, will you require the defendant George Wallace to put on evidence in his behalf before you will find him not guilty?" Her answer was "Yes".

The record shows that this was the first criminal case in which Mrs. Wilder had been called upon to serve and that she was unfamiliar with the rules of evidence in such cases. When the rule was explained to her by the court she expressed her understanding of it and her willingness to conform to it. It was for the trial court to decide which of her answers truly showed her attitude and the state of her mind. (*People* v. *Ryan,* 152 Cal. 364, 371 [92 Pac. 853].) When her entire examination is reviewed it is clear that there was no error in denying the challenge for cause, and that if permitted to serve she would have made a satisfactory juror. She was, however, excused by peremptory challenge. No other points with reference to her examination need be discussed.

The appellants were ably represented by counsel appointed by the court to represent them at the trial, and equally well represented by separate counsel on appeal. They were afforded a fair and impartial trial and no good reason for a reversal has been advanced.

The order denying the motion for change of place of trial is affirmed. The judgment and the order denying motions for a new trial are and each is affirmed.

Langdon, J., Curtis, J., Seawell, J., Thompson, J., and Waste, C. J., concurred.

Rehearing denied.