[Crim. No. 4029. Second Dist., Div. Two. Jan. 22, 1947.]

THE PEOPLE, Respondent, v. R. W. AGNEW, Appellant.

R. W. Agnew, in pro per., for Appellant.

Robert W. Kenny, Attorney General, Howard S. Goldin, Deputy Attorney General, M. Arthur Waite, District Attorney, and Hal V. Hammons, Deputy District Attorney, for Respondent.

MOORE, P. J.—On August 8, 1945, appellant made affidavit before a notary public of Santa Barbara County verifying the allegations of his complaint for an injunction against specified officials of Ventura County. The gist of his complaint was that the Justice of the Peace of Oxnard Township, the Chief of Police and City Attorney of Oxnard and three designated police officers with full knowledge of the operation of houses of prostitution in that city had failed for two years to arrest or prosecute the owners or employees of such houses and had given them protection; that Justice of the Peace Pecht and one Dingeman were operating such houses for private gain and were employing whores from other cities; that the city attorney refused to file a criminal complaint or an action

to abate the operation of the houses of vice and crime, and the justice of the peace had refused to permit the abatement of such houses. On the same day he filed the complaint in the Superior Court of Ventura County. On September 26, 1945, a true bill of indictment was returned by the grand jury of Ventura County charging that appellant knew that each of his allegations was false and had been feloniously, willfully and corruptly verified by him; that he knew that neither Dingeman nor Pecht was operating any house of prostitution for profit or otherwise and that he had corruptly sworn falsely and committed perjury.

On arraignment the accused man expressly waived the statutory time limit and his right to be represented by counsel and requested that he be furnished a phonographic transcript of the proceedings before the grand jury. Successive attempts to bring the case to trial were frustrated by occurrences that do not concern this appeal except the belated demurrer which was allowed, argued and overruled on January 11, 1946. After a jury trial ending in disagreement on January 18, appellant filed his motion to quash the indictment and a motion for change of venue and, on January 28, 1946, filed his "constitutional and defensive objection to trial or plea in a new trial" and a petition to perpetuate evidence. On the latter date all of appellant's motions and his plea of former jeopardy were denied, his demurrer was overruled and after three days of trial the jury returned a verdict of guilty of perjury as charged. After denials of his motion in arrest of judgment and for a new trial, the court ordered the suspension of proceedings and probation for 13 months subject to terms and conditions. Appeal was then taken from the judgment and from the orders (1) denying his motion for a new trial, (2) overruling the demurrer, (3) denying the motion to quash the indictment, (4) denying the motion for a change of venue, (5) denying a phonographic transcript of the grand jury proceedings, (6) amending the indictment and (7) "overruling constitutional and defensive objection to trial or plea in a new trial." Inasmuch, as under the appeals from the judgment and the denial of a new trial authorized by statute all alleged errors may be reviewed, further notice will not be taken of the six last mentioned orders. In presenting his appeal appellant has assigned ten errors by reason of which he demands a reversal.

(1) It is argued that the judgment has not sufficient evidentiary support; that there was a total failure of proof that appellant's oath was corrupt or that he "unlawfully swore to his allegation," or "that such allegation was material" to the complaint for injunction; that the trial "has a strong political flavor if not outright criminal suppression of evidence." Such language betokens appellant's lack of appreciation of the problem involved in a challenge of the sufficiency of the evidence to support the verdict. ■ Before his attack upon the characters of his defendants he was charged with knowledge of the statutes which declare it to be perjury for "every person who having taken an oath that he will testify . . . truly before any competent . . . officer or person . . . willfully and contrary to oath, states as true any material matter which he knows to be false," or who in any affidavit taken before any person authorized to administer oaths swears that he will testify before any competent tribunal to any particular fact and "in such affidavit willfully and contrary to such oath states as true any material matter which he knows to be false." (Pen. Code, §§ 118, 118a.) Section 125 goes further in declaring: "An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false." Reading section 125 in conjunction with the first two sections quoted, as it must be (*People* v. *Nelson,* 36 Cal.App.2d 515 [97 P.2d 1043]), it is seen that a reckless statement which is not known to be true is perjury if in truth such averment is false. ■ Also, it is perjury for one to make a false statement in a pleading filed in a judicial proceeding. (*People* v. *Godines,* 17 Cal.App.2d 721, 724 [62 P.2d 787]. See *People* v. *Fink,* 118 Cal.App. 631, 634 [5 P.2d 641].)

That appellant verified and filed the complaint is an admitted fact. That it contains statements which if untrue are libelous cannot be denied. It charges that defendants Dingeman and Pecht "are operating said houses of prostitution for private gain and are employing whores there from the cities of Bakersfield and Los Angeles." Both of the named men testified. Each denied that he had with the other or alone imported whores into Oxnard from any city or that he had any connection directly or indirectly with the conduct of a bawdy house in Oxnard or elsewhere at the time alleged or at any time; that he had ever owned or received revenue from a house

of prostitution in Oxnard or at any place in association with the other or with any party or alone, or that he had ever been associated with the other in any business venture. Inasmuch as the jury were privileged to believe the testimony of Pecht and Dingeman, thereby establishing the falsity of the allegation with respect to those parties, the only legal question to be considered is whether their testimony fulfills the statutory requirement of proving perjury by the testimony of two witnesses or by the testimony of one witness and corroborating circumstances. (See Pen. Code, § 1103a; Code Civ. Proc., § 1968.)

Appellant apparently detects what he conceives to be a vice in the State's proof in that neither Pecht nor Dingeman could testify to any fact other than concerning himself, leaving the testimony of each uncorroborated. But corroborative evidence may be circumstantial as well as direct. It may be discerned in the testimony and behavior of the accused himself, both on the witness stand and elsewhere. It need not be sufficient to establish the fact without the aid of other evidence. It is a function of the jury to interpret the attitude, conduct and testimony of the accused and, if they are convinced, to find · the ultimate fact, namely that he committed perjury as charged. (*People* v. *Darcy,* 59 Cal.App.2d 342, 348 [139 P.2d 118]; *People* v. *Todd,* 9 Cal.App.2d 237, 241 [49 P.2d 611].

Not only did a number of prominent residents of Oxnard testify that they had never heard the names of Pecht and Dingeman connected with the social vice of their city, but appellant testified that on the day he filed his complaint for the injunction his home was in Santa Maria, Santa Barbara County; that less than three months prior thereto, May 17, he was tried for drunk driving before Judge Pecht; that the parties named in his complaint were connected with the prosecution of the drunk driving charge; that at the time of filing his complaint he "felt awfully riled up"; that he felt he had been let down by Judge Pecht; that there had always been animosity between himself and Dingeman; that the purpose of his making a personal investigation into vice conditions in Oxnard was to file an injunction suit against those men and all the people involved in the drunk driving case. From such admissions it was a reasonable deduction that appellant was motivated by malice and by desire for revenge and not by a sincere belief in the truth of his charges or by an unselfish

zeal to serve his neighboring county. Appellant recited certain "beer conversations" with "Mexicans," "a cab driver," and "several people" who "insinuated" that Dingeman and Pecht owned houses of prostitution, but he could actually name only a single person, to wit, one Ellenberger, with whom he conversed and who said that "Dingeman and Pecht could say yes or no to the operation of a house of prostitution." He admitted that he had assumed that the prostitutes with whom he conferred had been brought to Oxnard by Pecht and Dingeman. For evident, good reasons the jury disbelieved the testimony of appellant as the fruitage of an overwrought imagination.

 Appellant's contention that he is immune from a prosecution for perjury because his allegations were based upon information and belief is not well founded. If a person willfully swears to a belief in the existence of a fact which he knows does not exist he is as guilty of perjury as if he had sworn directly to the existence of a fact which he knew did not exist. (*People* v. *Phillips,* 56 Cal.App. 291, 296 [205 P. 40] ; *In re Howell,* 114 Cal. 250, 254 [46 P. 159] ; *Cassady* v. *State,* 18 Okla.Cr. 568 [197 P. 171, 172].) For a person to couch his libelous accusations of crime and immorality against another in the conventional phrase of "information and belief" and expect to avoid prosecution for perjury because he did not make his statements directly as facts within his own knowledge, is to indulge too readily in the assumption that the law is meaningless in defining wrongs and that the machinery for prosecuting wrongdoers is too timid to go into action against one who substitutes for a direct allegation what is just as poisonous and deadly but in language which implies that the proof will be made by others than himself. (*People* v. *Godines,* 17 Cal.2d 721, 726 [62 P.2d 787].)

 The contention that the accusations against Pecht and Dingeman were not material to the complaint is wholly without merit. Any allegation is material if the evidence that would establish the truth of it could have properly influenced the court which tried or would have tried the issues. (*People* v. *Pustau,* 39 Cal.App.2d 407, 413 [103 P.2d 224].)

 (2) The fact that the complaint for injunction was verified in Santa Barbara County does not defeat the jurisdiction of the Superior Court of Ventura County. The indictment does show upon its face that the latter court had jurisdiction. The answer to all of appellant's contentions that the

grand jury of Ventura County had no power to consider and indict for the offense and that its court had no jurisdiction to try it is found in the statute which declares that the making of an affidavit is complete only "from the time when it is delivered by the accused to any other person with intent that it be uttered or published as true." (Pen. Code, § 124.) It is not until the verified false statement of the accused leaves the hands of its author that wrong to another is committed and the crime of perjury is complete. (*People* v *Robles,* 117 Cal. 681, 684 [49 P. 1042].) That appellant's complaint was filed with the County Clerk of Ventura County is not disputed. His perjury was thereby consummated.

The contention that an affidavit to untrue allegations based on information and belief is insufficient to subject its author to a prosecution for perjury is contrary to the plain letter of section 125 of the Penal Code. ▇▇▇ When a deponent willfully swears to a belief that a fact exists when at the same time he knows that it does not exist, he is guilty of perjury. (*People* v. *Phillips,* 56 Cal.App. 291, 296 [205 P. 40].) In *People* v. *Von Tiedeman,* 120 Cal. 128, 136 [52 P. 155], cited by appellant, it is held that section 125 is designed to include as perjury the verified and published statement of the accused containing matter which he knows is without basis in fact. In support of his thesis appellant cites also the criminal cases of *People* v. *French,* 134 Cal.App. 694, 700 [26 P.2d 310]; *People* v. *Chadwick,* 4 Cal.App. 63 [87 P. 384, 389]; *People* v. *Smith,* 1 Cal. 9; *People* v. *Phillips,* 120 Cal.App. 644 [8 P.2d 228]. None of them contains the substance of his claim. His argument that "willful" perjury cannot exist where the affidavit is "according to information and belief" is also without supporting authority. *People* v. *Swiggy,* 69 Cal.App. 574 [232 P. 174], which he cites, discusses "willfully" as used in section 270, Penal Code, which makes it a misdemeanor of a father who willfully omits to provide food and shelter for his child. In the instant action appellant was accused as follows: "did . . . feloniously, willfully, knowingly and corruptly swear falsely and commit perjury . . ."; that he "well knew" that neither Dingeman nor Pecht was operating houses of prostitution "at the time of swearing to, verifying and filing said complaint on injunction" which alleged that those men were operating such houses for private gain.

In his attack upon the jurisdiction of the court below appellant states many theories that range far afield and cites many

authorities that are not apropos. No advantage could be gained by a discussion of any of them.

■ (3) It is argued that the indictment either in its original form or as amended is insufficient to charge the crime of perjury and that if the amendment cured the pleading it was error to allow it without resubmitting the entire matter to the grand jury. The omission of the word "willful" from the pleading did not impair its sufficiency. Had the trial proceeded without it the rights of the accused could not have been affected in the slightest. (*Leonard* v. *Superior Court*, 4 Cal.2d 215, 218 [48 P.2d 687]; *People* v. *Curtis*, 36 Cal.App.2d 306, 318 [98 P.2d 228].) ■ The Leonard case settles many of the points raised herein. It points out that section 1008 of the Penal Code has so modernized the rule of refined certainty that the court may permit amendment of an indictment by either the district attorney or the grand jury so long as the offense charged is not changed and no prejudice is done to the substantial rights of the accused. The answer to appellant's contention that the Curtis case should be overruled because it conflicts with *People* v. *Turner*, 122 Cal. 679 [55 P. 685], is that since the Turner decision the Legislature has so renovated section 1008 as to permit the court to order an amendment. The laws are made by that body and not by the Supreme Court which essays merely to interpret. The Curtis case is a correct interpretation of the statute as remodeled. *Ex parte Bain*, 121 U.S. 1 [7 S.Ct. 781, 30 L.Ed. 849] and the California decisions, to wit, *People* v. *Bradbury*, 155 Cal. 808 [103 P. 215]; *People* v. *Lee*, 107 Cal. 477 [40 P. 754]; *People* v. *Ward*, 110 Cal. 369 [42 P. 894]; *People* v. *Ammerman*, 118 Cal. 23 [50 P. 15] and *People* v. *Perales*, 141 Cal. 581 [75 P. 170], were expressions of the courts upon statutes long since in desuetude. ■ Appellant's knowledge of the falsity of his charges and his deliberation in making the affidavit are both implied in the word "willfully" used in the indictment, and may be assumed from the fact that appellant appeared before an officer and solemnly swore to the complaint. (*Leonard* v. *Superior Court, supra.*)

The sufficiency of an indictment for perjury has been determined by an invariable rule since 1880. It was then enacted that an accusation for perjury is sufficient when it sets forth "the substance of the controversy or matter in respect to which the offense was committed and . . . before whom the oath alleged to be false was taken and that the . . . person

before whom it was taken had authority to administer it; with proper allegations of the falsity of the matter on which the perjury is assigned . . ." (Pen. Code, § 966; *People* v. *Curtis, supra.*) All of such requirements are contained in the instant indictment and proof of the utterance of the false averment was established by the admission of appellant as well as by the court records. The indictment met every statutory demand for a valid accusation of perjury.

 (4) Appellant declares in his brief that prior to the second trial he "was not furnished with the full and complete grand jury transcript of proceedings and witnesses before that body in its investigations of defendant's utterance." He says he moved the trial court to have such transcript furnished to him and that the court forthwith heard and denied his motion. His brief later discloses that on August 22, 1945, the grand jury conducted an investigation of vice conditions in Oxnard. At that time appellant was the only witness to appear before the inquisitorial body. No inquiry into appellant's conduct occurred prior to September 20, 1945, at which time he testified. The record shows his admission in open court that he received a transcript of the grand jury's proceedings one week prior to the trial which resulted in his conviction. If he had claimed error in that a copy was not served prior to the first trial his contention would be meaningless, since the results of that trial are not on review. But inasmuch as he received a copy one week prior to the second trial and makes no showing of prejudice resulting from a tardiness in the service upon him of a copy of the transcript of the grand jury's proceedings, his contention is not only unsupported but if true the delay in serving the transcript would be harmless. (Const., art. VI, §4½) Substantial compliance with Penal Code section 925 is evident from the fact of service of the transcript.

 (5) No prejudice is shown to have resulted from the court's denial of appellant's motion for change of venue: Appellant's eloquent dissertation upon the failure of justice to prevail in a small county like Ventura, lacking in industry, devoted in the main to agriculture, where the residents are acquainted with a larger percentage of the people than in the great counties and strong bands of friendship prevail among such residents and the witnesses who testified for the People, is an argument which he might have addressed to the trial court in support of his motion for a change of place of trial.

Such a motion is addressed to the reasonable discretion of the court. Section 1035 of the Penal Code requires the trial court to transfer the action to the proper court of some convenient county "if the court be *satisfied* that the representations of the applicant are true." The emphatic implication of the section is that if the trial court is not satisfied that the representations of the applicant are true it is not obliged to grant his motion. The ruling of the trial court upon such a motion is final unless it appear from the proof as a matter of law that a fair trial could not have been had before an impartial jury. The affidavit in support of the motion does not disclose such a state of public mind as to require such conclusion. To warrant such a holding by this court the crime charged and the facts averred in support of the motion must have been of such a nature as would have aroused that state of feeling which becomes a contagion upon a mere recital of the circumstances of the crime and which makes it apparent that a fair trial would have been impossible in the county by reason of an inflamed public mind. (*People* v. *Yoakum,* 53 Cal. 566, 567.) Not a witness testified to an opinion that an impartial jury could not be obtained. Appellant presents himself in an "unfriendly position," an outsider from another county pitted against a powerful district attorney, the mob howling at his heels. "The psychology of the pack is to tear down the weaker and devour the wounded," says appellant. But there was no mob and neither Judge Bray who presided at the second trial nor Judge Parker who presided at the first seemed to sense any blind rage on the part of the public, for the former granted probation while the latter was of the opinion that the crime of appellant was the act of a "nut" and suggested that the matter should be disposed of by appellant's retraction of his charges.

The facts that some of the jurors were friends of the district attorney or his deputies and that some knew Dingeman or Pecht did not make the proof which required the trial court to grant the motion. That appellant was satisfied with the empaneled jury is evidenced by his failure to exercise four of his peremptory challenges. The thorough inquiry into the state of mind of each prospective juror by appellant as well as by the prosecutor and the court discloses that a satisfactory jury was selected, that the denial of a change of venue was reasonable and that the court's discretion was not abused. (*People* v. *Wallace,* 6 Cal.2d 759, 764 [59 P.2d 115] ; *People* v. *Coen,* 205 Cal. 596, 604 [271 P. 1074].)

■ (6) Appellant's contention that his plea of former jeopardy should have been granted is without support. His first trial was concluded January 18 when the jury in disagreement was discharged. The second trial proceeded on January 28 when the plea of former jeopardy was presented and denied. The facts before the court showed as a matter of law that there had been neither a conviction nor an acquittal of appellant on the pending indictment. All of the proceedings thereon had been in the same court in which the plea was filed. The court therefore properly denied the plea. (*People v. Hinshaw*, 194 Cal. 1, 24 [227 P. 156].) Where a jury has been discharged with the consent of the defendant without rendering a verdict there was no jeopardy and the court properly denied the plea. (*People v. Baillie*, 133 Cal.App. 508, 513 [24 P.2d 528] ; *People v. Kelly*, 132 Cal.App. 118, 121 [22 P.2d 526].) The authorities cited by appellant (*People v. Tucker*, 115 Cal. 337 [47 P. 111] ; *People v. Hamberg*, 84 Cal. 468 [24 P. 298], etc.) involved facts which were unknown to the court to which the pleas had been presented and therefore required submission to the jury to hear the evidence and determine whether there had been former jeopardy.

■ (7) The contention that the verdict is void is based upon the theory that it is an essential to the validity of a verdict convicting one of perjury that it shall declare that the offense was ''knowingly'' committed. There is no such requirement. The verdict convicting appellant reads : ''We, the jury impaneled to try the above entitled cause, find that the defendant is *guilty* of the offense charged in the indictment.'' A verdict of similar phrase and diction has been held sufficient. (*People v. Perez*, 87 Cal. 122, 123 [25 P. 262] ; *People v. Dufault*, 1 Cal.App.2d 105, 108 [36 P.2d 196] ; *People v. DeVaughn*, 136 Cal.App. 746, 749 [29 P.2d 914] ; *People v. Manners*, 70 Cal. 428 [11 P. 643].)

■ (8) Appellant assigns as prejudicial misconduct of the prosecutors the following acts and utterances at various stages of the trial :

(1) ''We will prove that Mr. Agnew had no information of any such activity on the part of Mr. Dingeman and Pecht. In fact, he knew himself they were not engaged in the operation of houses of prostitution.'' (2) ''The entire matter arose out of the animosity which Mr. Agnew bore to Judge Pecht because of a conviction of drunk driving he suffered in his court, and because of some business deals he had with Mr.

Dingeman.'' (3) ''He has a record three pages long.'' (4) ''A man who files a complaint and charges all these things in it cannot be found guilty of slander. He is guilty of perjury or nothing.'' (5) The refusal to divulge the name of the tenant of certain premises on East 6th Street in Oxnard. (6) ''I don't think he ever went into that house at 139 East 6th Street which he bases his argument on and which is part of his defense here . . . where there is a witness that knows anything about conditions in Oxnard and who has come in and testified there are houses of prostitution let run at anytime . . . They go out and find who owns the places and go in to those places. They went in and investigated that place. He was going to try to get the evidence. What did he get?'' (7) The statement to the witness Heist as follows: ''Will you answer the question. I realize you want to get something in for Mr. Agnew.'' (8) The calling of the witnesses Mayr and Holt to testify that defendant's reputation in the community for truth, honesty and integrity was bad. (9) Misconduct in asking witnesses, including the district attorney, whether they had ever heard that either Dingeman or Pecht was connected with a house of prostitution.

As to assignment 1, the statement of the district attorney was actually proved at the trial, not only by Pecht and Dingeman but substantially by the admissions of appellant himself. Not only did he admit that he was ''riled up'' at the time he filed the injunction suit and that he felt that he had been let down by Judge Pecht, but also that there had always been animosity between Dingeman and himself and that the purpose of his investigation of vice conditions in Oxnard was for the purpose of filing the injunction suit against Pecht and Dingeman. He produced no evidence that either Pecht or Dingeman had an interest in any house of prostitution except what he reported to have been said by irresponsible and, for the greater part, unnamed habitues of a beer parlor. As to assignment 2, the district attorney was justified in his statement by the evidence already quoted. As to 3, the statement was made in the absence of the jury and could therefore have caused no prejudice. As to 4, the statement was a fair deduction from the evidence. As to 5, refusal of the district attorney to divulge the name of the tenant was an objection addressed to the court, whose favorable ruling thereon cannot be assigned as misconduct of the prosecutor. As to 6, it was not

prejudicial for the prosecutor (a) to bring to the attention of the jury that no proof had been made that houses of prostitution were allowed to run in Oxnard, and that (b) although appellant promised to try to get the evidence he had produced nothing but his own narrative of interviews in beer parlors with a Mexican who "insinuated" Pecht and Dingeman were operating houses of prostitution; one Lucy Hicks who testified that neither Dingeman nor Pecht owned any interest in her house; certain unnamed prostitutes who, appellant admitted, he had assumed had been brought to Oxnard by the men he had accused and who did not tell him that Pecht or Dingeman owned and operated the houses of vice; Don Ellenberger, who was never called to testify and who the jury may reasonably have inferred never had existed in the flesh. As to assignment 7, the remark addressed to the witness Heist, the court promptly stated that it was improper and directed the jurors to disregard it. As to 8, it was not misconduct to call witnesses to impeach the defendant as a witness. He invited such attack when he testified. Moreover, as each of the witnesses took the stand appellant offered to and did stipulate that the witness would testify that defendant had "a bad character for truth, honesty and integrity." As to 9, it was not misconduct to ask witnesses whether they had heard that Dingeman and Pecht had been engaged in operating bawdy houses. The only evidence of his charge produced by appellant was the gossip of comparatively unknown persons recited in the testimony of appellant, and of such of those who were called to the stand all denied knowledge of any interest of Pecht or Dingeman in houses of prostitution.

All of the questions of the district attorney assigned as misconduct were propounded orderly, without repetition and without violating a prior ruling or admonition of the court, and cannot therefore be condemned. The remarks made in his opening statement were a dispassionate declaration of what he intended to prove and could not be construed as an attempt to inflame the minds of the jurors. The language used in his closing address embodied only a statement of the evidence or reasonable inferences from the facts proved. But if all the acts specified by appellant, including those above mentioned as misconduct, had been vicious, inflammatory or unfair, appellant's belated criticism of them now would avail him not, for the reason that at the time he did not assign them as error, ask that they be stricken, or request that the jury

be directed to disregard them or that the district attorney be reproved for misconduct. It is elementary that an appellant cannot for the first time on appeal successfully criticize the trial court's conduct of the proceedings. To show prejudice and thereby gain a reversal the appellant must have made his criticism of any erroneous ruling or of any remark at a time when the trial judge had it in his power to prevent harmful error.

(9) All of the grounds urged for a reversal by reason of the court's denial of the motion for a new trial have been practically disposed of in the foregoing discussion. Appellant argues *in extenso* that he did not have a fair trial by reason of the "atmosphere of hostility existing throughout the entire county and the jury was composed of admitted friends of the persons accused by defendant"; that the comments of Judge Parker had created a widespread prejudice against appellant; that there is not an iota of proof that he did not have the information to warrant his charges. He contends that the court erroneously (1) rejected his offer to prove his payment of $6 to Dingeman for towing appellant's truck; (2) rejected his offer to prove that one Wilson had testified at the trial of the drunk driving charge that appellant was not drunk at the time of his arrest; (3) overruled appellant's objections to the cross-examination of appellant with reference to all the defendants named in the injunctive complaint.

The trial court was familiar with each of the matters above mentioned and with all others enumerated in appellant's brief. The offers of his rejected proof as well as the admission of the State's evidence involved only elementary principles of the admissibility of evidence upon which the rulings were correct. That appellant could have a fair trial in Ventura County and that he had not suffered prejudice by reason af a widespread animosity against him were matters addressed to the sound discretion of the trial judge (8 Cal.Jur. 581, § 578), and it cannot be said that his decision on either the motion for a change of venue or for a new trial was arbitrary or unreasonable. It appears necessary to repeat that decisions on questions of fact are to be made by the trial court, and with them the reviewing court cannot interfere unless there is no substantial support for such decisions.

 (10) Practically all of the court's instructions are in conventional form. Apparently without an appreciation of

their significance appellant criticizes them *in globo* as prejudicial to his cause. No substantial defect is suggested as to any of them but emphasis is laid upon the instruction that defendant ''for the purpose of this trial is conclusively presumed to be sane.'' This instruction had been invited by appellant when in his motion for a change of venue he had pleaded that after the first trial Judge Parker had referred to him as a ''nut'' and averred in his supporting affidavit that he had heard street talk that he ''is a screwball and a nut because Judge Pat R. Parker said so and he ought to know because he heard the trial and that he couldn't have been prejudiced because he was an outside judge.'' If under the circumstances of a reported current gossip it appeared reasonably necessary for the protection of the interests of either the defendant or the State that the court should give an instruction that the accused is presumed to be sane, such decision was within the range of the court's discretion and will not be disturbed by the reviewing court. ▮▮▮ However, if there were substantial error in all the instructions the case could not be reversed for the reason that a review of the record including the evidence leaves no doubt that there was no miscarriage of justice. (Const. art. VI, § 4½.)

The judgment and the order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied February 4, 1947, and appellant's petition for a hearing by the Supreme Court was denied February 20, 1947.