## William L. Coyne

### *v.*

### The People of the State of Illinois.

*Filed at Ottawa January 19, 1888.*

1. Criminal law—*attempt to suborn a witness—elements of the offence —and herein, what constitutes perjury.* In order to convict a person, under section 228 of the Criminal Code, of endeavoring to incite or procure another to commit perjury, it must be shown that the accused urged the witness to give false testimony, knowing that such witness, as well as himself, was aware of its falsity. It must appear that the witness would have been guilty of perjury if he had given the proposed false testimony, which could not be unless he knew it to be false.

2. To commit perjury, a person must *willfully, corruptly and falsely* swear or affirm to some material fact or matter. The false assertion made by the wit-

2—124 Ill.

ness under oath, *must be known* to the witness to be false, and must be intended by him or her to mislead the court or jury.

3. If a proposed witness believes what he is asked to testify to is true, and does not know of its alleged falsity, he will not be guilty of perjury if he swears to it; and in such case, the person soliciting the witness to so testify, can not be convicted, under section 228 of the Criminal Code, of endeavoring to procure such witness to commit perjury.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. E. D. SWEENEY, for the plaintiff in error:

The indictment failed to show properly the materiality of the evidence the defendant was charged with having sought. It is too general to charge that the evidence was material. The materiality of the evidence to the issue is necessary to its criminality. *Morrill* v. *People*, 32 Ill. 500; *Pollard* v. *People*, 69 id. 153; Roscoe on Crim. Evidence sec. 758; 2 Wharton on Crim. Law, sec. 1304, and note.

There was no issue averred and none proved. The bill standing on demurrer, there was no issue of fact.

To solicit a person to testify falsely in a case not brought and pending, is no crime. *State* v. *Joaquin*, 69 Maine, 218.

The third and fifth of the People's instructions were erroneous, in leaving out all reference to criminal intent on the part of Coyne.

The court had no jurisdiction of this case. The perjury referred to in section 228 of the Criminal Code, is the perjury defined in sections 225, 226 and 227, and can be no other, and the "judicial proceedings" are proceedings in the State of Illinois. *People* v. *Merrill*, 2 Park. 590; *People* v. *Sweetman*, 5 id. 90; *State* v. *Adams*, 4 Blackf. 147; *People* v. *California*, 38 Cal. 145; *State* v. *Pike*, 15 N. H. 83; *Commonwealth* v. *Smith*, 11 Allen, 243.

Mr. GEORGE HUNT, Attorney General, for the People:

The statute (section 228,) does not require that the attempt shall be to procure another to commit perjury in this State, but the place where the perjury is to be committed is not mentioned. If the attempt take place in this State, the offence against the laws of this State is complete. 1 Bishop on Crim. Law, 143; Wharton on Am. Crim. Law, (3d ed.) 280, 281; Desty on Am. Crim. Law, sec. 55; 2 Russell on Crimes, 622; 3 Archbold's Crim. Pl. 619-621, note; *People* v. *Mather,* 4 Wend. 229.

There was a judicial proceeding pending in the State of Iowa when the solicitation took place, and the statute does not require that issue shall have been joined before this crime can be committed.

It is urged by counsel for plaintiff in error, that the materiality of the matter upon which the attempted perjury is assigned, does not appear. It need not, if there be an averment of its materiality. *Pollard* v. *People,* 69 Ill. 153; *Kimmel* v. *People,* 92 id. 457.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

Plaintiff in error was indicted by the grand jury of Rock Island county at the September term, 1886, of the circuit court of that county for endeavoring to incite and procure one Margaretha Fluegel to commit perjury. The case was tried at the following January term, and the plaintiff in error was found guilty by the jury. His term of imprisonment was fixed at two and a half years in the penitentiary and sentence was passed against him in accordance with the verdict.

On the 26th day of June, 1885, George H. Maish commenced an attachment suit in the circuit court of Scott county in the State of Iowa against Henry Fluegel, alleging an indebtedness due from Fluegel of $4013.89, and that he was a non-resident of Iowa. The attachment writ was levied upon a farm in

Scott county, Iowa, called the "Wapsie farm." This attach-
ment suit was afterwards tried before a jury in December,
1885, and a verdict was rendered in favor of Fluegel and
against Maish, and, in March, 1886, a new trial was refused
and judgment entered on the verdict.

On the same day, on which the attachment proceeding was
begun, a petition was filed, in said Scott county circuit court
in Iowa, on the equity side thereof, against Henry Fluegel
and plaintiff in error, William L. Coyne, setting up the attach-
ment proceeding and the levy upon the Wapsie farm, and
alleging, that the Wapsie farm was in truth and in fact the
property of Henry Fluegel; that, on December 8, 1884, Fluegel
had made a deed of the farm to Coyne for the purpose of hin-
dering, delaying and defrauding his creditors, which deed was
recorded on the day of its date in Scott county, Iowa; that
there was no valid consideration for the deed, and that Fluegel
made it with the intent to place his property beyond the reach
of his creditors; that Coyne held the land in trust for Fluegel
and for the purpose of helping the latter to defraud his cred-
itors, and that they were about to make sale of it, etc. The
petition prays for an injunction against the sale, and that the
deed be set aside and cancelled and the land subjected to the
payment of the debt of Maish. On October 21, 1885, Coyne
and Fluegel filed a demurrer to the petition, which demurrer
does not appear to have ever been disposed of.

The deed of the Wapsie farm, which Henry Fluegel and
Margaretha Fluegel, his wife, made to the plaintiff in error on
December 8, 1884, recites, that it is made subject to a mortgage
of $2600 held by one Quinn, the payment of which plaintiff in
error assumes. It is claimed by plaintiff in error, that he
purchased the Wapsie farm of Henry Fluegel in good faith,
and paid him therefor by deeding to his wife, at his request, a
house and lot on Eighteenth street in the city of Rock Island
at $3700, by surrendering a note against him for $500 and a

claim against him of $200 for services rendered, and by assuming the mortgage for $2600.

A deed, dated December 8, 1884, was made by Coyne to Margaretha Fluegel and is introduced in evidence. This deed recites that it is made for a consideration of $3000 and subject to a mortgage of $700 held by one Eve McKinstry, the payment of which is not assumed by Margaretha Fluegel, the grantee in the deed.

Plaintiff in error was indicted and tried and convicted upon a charge of endeavoring in Rock Island county, Illinois, to incite and procure Margaretha Fluegel to appear as a witness, on the trial in Scott county, Iowa, of the said equity cause of *Maish* v. *Fluegel and Coyne*, or on the taking of proof in said cause, on behalf of her husband and Coyne, and to swear that the conveyance of the Wapsie farm by her husband to Coyne was a "right trade," that is to say, a valid and *bona fide* transfer, and that Coyne gave to her husband for the farm the note for $500, the claim for $200, and the house and lot on Eighteenth street, valued at $3000, and assumed the mortgages for $2600 and $700.

The indictment charges, that the deed of the Wapsie farm was made by Fluegel without consideration and to hinder and defraud creditors, and was not a good and valid trade, and that the conveyance of the house and lot by Coyne to Fluegel was not made for the consideration of $3700, but was merely a conveyance in trust, and that Fluegel did not owe either the $500 or the $200, and that Coyne did not assume the payment of the $2600, etc., and that all these facts were well known to the said Coyne, etc.

The prosecution in this case was conducted mainly by the attorneys of Maish rather than by the prosecuting attorney of Rock Island county. It may have been perfectly right and proper for the district attorney to call in other counsel to assist him, but an examination of the record makes upon our minds the decided impression, that a criminal proceeding has

been resorted to to force the collection of a civil debt.   Maish was trying to subject the Wapsie farm in Iowa to the payment of a debt of $4013.89, which he claimed to be due to him from Fluegel, and, in order to do this, he was obliged to show, that the farm belonged to Fluegel and not to Coyne.   His success in this direction would certainly be much easier with Coyne in the penitentiary and his character as a witness broken down.

On the trial in the court below two issues were presented to the jury.   The first issue was as to the truth or falsity of the alleged facts, which Coyne is charged with having endeavored to incite Mrs. Fluegel to swear to.   In other words, was the deed of the farm from Fluegel to Coyne a *bona fide* sale, or was it fraudulent and without consideration?   Upon both sides of this question there was introduced a large mass of testimony both documentary and oral.   Coyne swore that he bought the farm in good faith and paid the consideration already stated; Fluegel and his wife swore that the deed made by them was without consideration.   It is proven beyond question, that, after he received his deed, Coyne went into possession of the Iowa farm and rented it and collected the rents, and it is also proven beyond question, that, after Mrs. Fluegel received her deed of the house and lot, she and her husband went into possession and lived in the house and made repairs and changes in it, and rented a part of it to other parties.   Evidence, properly introducible in a chancery proceeding to set aside a deed, was presented before the jury to substantiate a criminal charge, and, owing to the complicated nature of such evidence, a careful study of it will leave upon the candid mind a serious doubt as to whether the real truth of the matter lies with one party or the other.

The second issue, presented before the jury, was whether or not the plaintiff in error endeavored to incite and procure Mrs. Fluegel to testify to the matters already referred to.   The witnesses as to the endeavor to so incite and procure Mrs. Fluegel to swear to falsehoods were Mrs. Fluegel herself, her husband,

Henry Fluegel, and her husband's brother Michael Fluegel all of whom are contradicted by plaintiff in error. Henry Fluegel had the strongest motives of interest to sustain the prosecution against Coyne. As a result of the success of that prosecution he might get rid of his debt to Maish, and of other debts for which he had confessed judgments. His testimony bears such ear-marks as justify the greatest caution in its accept- ance. He not only admits that he was party to an outrageous scheme to defraud his creditors, but he confesses that he agreed to swear to a lie and wrote down false statements in German, for the purpose of having them learned by his own wife that she might swear to them.

Henry, Margaretha and Michael Fluegel swear, that Coyne came into their store one day in August or September, 1885, and, taking a seat upon the counter, told Mrs. Fluegel that, when the trial should come off in Iowa, she must swear, that the sale of the Wapsie farm by her husband was *bona fide*, and to the other matters above mentioned. Henry claims to have been present and heard what Coyne said to his wife. Michael, a German, who admits that he does not understand English very well, claims to have been in an adjoining room and to have heard what Coyne said through the partition. As we understand the evidence, the incitement charged in the indict- ment consists solely and exclusively of what Coyne said to Mrs. Fluegel upon the particular occasion here referred to. She herself swears that only upon this one occasion did Coyne tell her what she must testify to.

The third instruction given on behalf of the People was as follows:

"3. The court instructs the jury that the material allega- tions of the indictment in this case are, first, that there was a bill in equity, filed in the district court of Scott county, Iowa, wherein George H. Maish was complainant, and the defendant and Henry Fluegel were defendants, in which it was substan- tially charged that Fluegel was the real owner of the 'Wapsie

farm,' and that Coyne had the same in trust and for the use of Fluegel; second, did the defendant, in the county of Rock Island and State of Illinois, attempt to incite or procure the witness, Margaretha Fluegel, to testify that the trade of said Fluegel to Coyne was a right trade; that Coyne gave the Eighteenth street property at $3000, and Fluegel assumed the $700 mortgage on said Eighteenth street property, and that Coyne assumed the $2600 mortgage on the 'Wapsie farm,' and that Fluegel owed Coyne $500 on a note and $200 for services, and that said proposed testimony was material to said bill in equity, and was false. And if the jury believe, from the evidence, these propositions are proved, beyond a reasonable doubt, then the jury should find the defendant guilty."

Even if the jury had found, that the propositions stated in the third instruction were proven beyond a reasonable doubt, the plaintiff in error may not have been guilty of endeavoring "to incite or procure" Mrs. Fluegel "to commit perjury." Section 228 of the Criminal Code of this State provides that "whoever endeavors to incite or procure any other person to commit perjury, though no perjury is committed, shall be imprisoned," etc. (Hurd's Rev. Stat. chap. 38.) The crime, which the prisoner was accused of endeavoring to incite another person to commit was *perjury.* Section 225 of our Criminal Code thus defines perjury: "Every person, having taken a lawful oath or made affirmation, in any judicial proceeding, or in any other matter where by law an oath or affirmation is required, who shall swear or affirm willfully, corruptly and falsely in a matter material to the issue or point in question * * * shall be deemed guilty of perjury," etc.

To commit perjury, a person must "*willfully, corruptly and falsely*" swear or affirm. The false assertion made by the witness under oath *must be known* to such witness to be false, and must be intended by him or her to mislead the court or jury. 2 Wharton on Crim. Law, (9th ed.) sec. 1244.

The third instruction is erroneous, because it leaves out of view the element of corrupt intent on the part of the person incited. It in no way intimates, that Mrs. Fluegel *knew* that what she was asked to swear to was false. The deed to her of the house and lot and the deed to Coyne of the farm were both absolute deeds upon their faces. The evidence tends to show, that her own husband concurred in the statements made to her by Coyne as to what she was to say on the witness stand. If she believed, that what she was asked to testify to was true and did not know of its alleged falsity, then she would not have been guilty of perjury, if she had sworn to it. 2 Wharton on Crim. Law, secs. 1245, 1246.

If plaintiff in error was trying to persuade Mrs. Fluegel, that certain alleged facts were true, and to swear to them because of her belief that they were true, he was not endeavoring to incite her to commit perjury even though he knew that the testimony he wanted her to give was false. It must appear, that he was urging her to give false testimony, knowing that she, as well as himself, was aware of its falsity. "Though a party, who is charged with subornation of perjury, knew that the testimony of a witness whom he called would be false, yet if he did not know that the witness would willfully testify to a fact, knowing it to be false, he can not be convicted of the crime charged." 2 Wharton on Crim. Law, sec. 1329.

An instruction, similar to the one now under consideration, was, for the reason here indicated, decided to be erroneous by the Supreme Court of Massachusetts in *Commonwealth* v. *Douglass*, 5 Metc. 241. *United States* v. *Dennee*, 3 Wood's Rep. 39; *Stewart* v. *State*, 22 Ohio St. 477.

The fifth instruction given for the People was erroneous for the same reason here urged against the third, and neither of them was cured by any instruction that was given. The fifth of defendant's refused instructions embodied the idea of guilty intent on the part of Mrs. Fluegel and should have been given.

As already stated, the judicial proceeding, in which the testimony of Mrs. Fluegel was to have been given, was pending in the State of Iowa. The point is made and elaborately argued by counsel for the defence, that a person in this State can not be punished in a court of this State for inciting another person, also in this State, to commit perjury in a proceeding pending in another State. It is claimed, that our statute upon this subject contemplates perjury committed in proceedings or matters pending in this State and not in a foreign jurisdiction. We do not deem it necessary to discuss this question and pass no opinion upon it.

The indictment in this case charges that perjury was a crime punishable by the laws of Iowa, and that the false swearing, which the defendant is accused of having endeavored to incite, would have constituted perjury under the laws of Iowa. It is also averred in the indictment, that the false testimony in question could have been given under the laws of Iowa, or, in other words, that Mrs. Fluegel would have been a competent witness for her husband in Iowa, though she could not have testified for him, if the proceeding above described had been pending in Illinois.

The laws of Iowa were introduced in evidence. We have examined the definition of perjury as contained in the code of that State and find it to be substantially the same as the definition given in our own statute. Therefore, if it be admitted that plaintiff in error can be punished for endeavoring to procure the commission of perjury in a suit pending in another State, the third and fifth instructions, considered with reference to the Iowa definition of perjury, as well as when considered with reference to the Illinois definition thereof, are erroneous in the respect already pointed out.

The judgment of the circuit court is reversed and the cause remanded.

*Judgment reversed.*