THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
MIGUEL BERMÚDEZ, Defendant and Appellant.

No. 15477. Argued November 5, 1953.—Decided January 15, 1954.

*F. García Quiñones* for appellant. *José Trías Monge, Attorney General,* and *Jaime García Blanco, Special Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

Miguel Bermúdez was found guilty and sentenced by the Superior Court of Puerto Rico, San Juan Part, for an offense of Subornation of Perjury, and has appealed to this Court. He has assigned nineteen errors. At the outset, we shall consider the first assignment which involves the allegation that the information filed in this case is legally insufficient because it does not state facts constituting the offense of Subornation of Perjury.

■ The information presented in this case reads as follows:

"The Prosecuting Attorney hereby files an information against MIGUEL BERMUDEZ domiciled at Street No. 6, Barrio Obrero, Santurce, c/o Treasury Department, Bureau of Beverages, San Juan, Puerto Rico, for a violation of § 122, in connec-

tion with §§ 117 and 36 of the Penal Code of Puerto Rico (felony) committed in the following manner: The aforesaid defendant, Miguel Bermúdez, on or about the early part of April, 1951, in the judicial district of Puerto Rico, San Juan Section, taking advantage of his position as Internal Revenue Agent, wilfully, maliciously, criminally and corruptively, instigated and procured Raúl González Trinidad, in charge of the Beverages Department to commit perjury making him swear as he actually did, before the Hon. Judge Renato Ortiz, of the Municipal Court of Puerto Rico, San Juan Section, a competent authority to administer an oath, that in the residence located at Valparaíso Street No. 714, Santurce, Puerto Rico, there existed and was sold clandestine rum, facts which are material for the request and issuance of a search warrant for a violation of the Spirits and Alcoholic Beverages Acts, facts which neither defendant nor Raúl González Trinidad knew to be true and which furthermore were false.—This is contrary to the law provided therefor and to the peace and dignity of the 'People of Puerto Rico.' "

Although the facts alleged in the information are characterized as a violation of § 122 in connection with §§ 117 and 36 of the Penal Code, the facts charged show that the offense alleged is a violation of § 124 of the same legal corpus. This classification or designation of a crime, or the identification of a section allegedly violated in an information, is not final, since it is the facts charged therein, and not the name given to the offense which control the proper identification of the crime charged and of the statutory provision involved. *The People* v. *Behn et al.*, 13 P.R.R. 1; *The People* v. *González*, 17 P.R.R. 1140; *People* v. *Rodríguez*, 46 P.R.R. 525; *People* v. *Canals*, 48 P.R.R. 775; *People* v. *Conroig*, 60 P.R.R. 163; 42 C.J.S. 992, 993, 1034.

 Sections 36, 117, 122 and 124 of our Penal Code provide as follows:

"Section 36.—*Principals*. All persons concerned in the commission of a crime whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of four-

teen years, lunatics or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, are principals in any crime so committed.

"Section 117.—*Perjury, Defined.* Every person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, wilfully and contrary to such oath, states as true any material matter which he knows to be false, is guilty of perjury. It is no defense to a prosecution for perjury that the oath was administered or taken in an irregular manner.

"Section 122.—*Unqualified Statement.* An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false.

"Section 124.—*Subornation of.* Every person who wilfully procures another person to commit perjury is guilty of subornation of perjury, and is punishable in the same manner as he would be if personally guilty of the perjury so procured."

Section 36 is of a general character and insofar as relevant herein, it applies to all the persons who shall have advised and encouraged the commission of perjury, such persons being considered principals. *People* v. *Montaner*, 61 P.R.R. 116, 121. Section 122, to which the information incorrectly refers as the basic Section containing the elements of the offense, does not really contain the definition of the offense but merely establishes a general principle to the effect that an unqualified statement of that which one does not know to be true, is equivalent to a statement of that which one knows to be false. That Section is relevant herein, as we shall see later but the Section that really serves as the ground and basic structure of the information is § 124, which provides that every person who wilfully procures another person to commit perjury is guilty of subornation of perjury.

Now then, to establish a violation of § 124, it must be proved that the person induced to act has committed a violation of § 117 which defines perjury. That is, to hold the suborner liable under § 124, the person attempted to be suborned must actually commit perjury, as that crime has

been defined in § 117. The crime of perjury must be consummated. This is evident from § 124 itself. In its Spanish text the Section refers to every person who wilfully *"indujere"* (induces) another person to commit perjury. In its English text which is the prevailing one, § 13 of the Civil Code, it provides:

"Every person who wilfully *procures* another person to commit perjury is guilty of subornation of perjury, and is punishable in the same manner as he would be if personally guilty of the perjury *so procured.*" (Italics ours.)

In its Spanish text reference is made to the perjury *"así conseguido"* (so procured).

The term used in the Spanish text *"indujere"* does not exactly correspond to the term "procures" which means: to acquire for one's self, to cause, to effect, to endeavor, to bring about, to obtain, to succeed in consummating the act induced. *Words and Phrases*, Permanent Edition. Vol. 34, p. 175; *U.S. v. Somers*, 164 Fed. 259; *Brea* v. *McGlashan*, 39 P. 2d 877, 3 Cal. App. 2d 454; *Willson* v. *Turner, Resilient Floors Inc.*, 201 P. 2d 406, 89 Cal. App. 2d 589; *State* v. *Bixby*, 177 P. 2d 689; *Shonfeld* v. *State*, 40 N. E. 2d 700; *Marcus* v. *Bernstein*, 23 S. E. 38; *Long* v. *State*, 36 N. W. 310. To sustain an indictment for subornation of perjury under § 124, it is necessary that perjury has in fact been committed. 70 C.J.S. 549; 41 Am. Jur. 41. *Hammer* v. *United States*, 271 U. S. 620; *Meyers* v. *United States*, 171 F. 2d 800, 11 A.L.R. 2d 1, certiorari denied, 336 U. S. 912. As a result of this postulate, an information for subornation of perjury must not only allege the elements of the offense as they appear in § 124, but it must also allege the elements constituting perjury as set forth in § 117, that is, the information of subornation of perjury must fulfill the requirements and circumstances exacted in § 117 which refers to the crime of perjury and it should contain the essential allegations under that Section. *People* v. *Ross*, 103 Cal. 425; *People* v. *Turner* 122 Cal. 679. An information for subornation of perjury,

must contain all the facts and allegations of perjury. 70 C.J.S. 552; *Danaher* v. *U. S.*, 39 F. 2d 325.

■ Now then, § 117 contains, in brief, the following essential elements defining perjury:

(1) That the person has taken an oath that he will testify truly before any competent tribunal, officer or person.

(2) That the person states as true any material matter which he knows to be false.

(3) That the person wilfully and contrary to such oath has thus testified falsely.[1]

. Several problems arise as to the sufficiency of the information filed in the case at bar. In the first place, it is alleged in the information that the facts appearing in the affidavit given by Raúl González Trinidad were false and that neither the defendant (alleged suborner) nor declarant Raúl González Trinidad know them to be true. It is not alleged in the information that the defendant and the declarant knew the falsity of those facts. It is only alleged that they did not know them to be true. However, § 122 of the Penal Code provides that "an unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false." Section 122 must be read and interpreted in conjunction with § 117 and in this sense, an information alleging that the declarant, upon testifying, did not know the facts to be true, is sufficient, since it is equivalent to a statement to the effect that he know the facts to be false. *People* v. *Nelson*, 36 Cal. App. 2d 515, 97 P. 2d 1043; *People* v. *Agnew*, 77 Cal. App. 2d 748, 176 P. 2d 724; *People* v. *Tolmachoff*, 58 Cal. App. 2d 815, 138 P. 2d 61; 70 C.J.S. 474.

■■ Section 122 in providing that a statement which one does not know to be true, is equivalent to a statement

---

[1] In its English text § 117 requires that the false testimony shall be given "wilfully and contrary to such oath." That requirement was not incorporated into the Spanish text apparently by inadvertence. The English text should prevail, and therefore, the phrase cited involves an essential element of perjury.

which one knows to be false, is applicable by its own terms, to the declarant, and not to the suborner. But the information filed in this case, although it does not state that the defendant knew the facts to be false, alleges that the defendant suborner acted wilfully, maliciously and with criminal intent. That statement implicitly involves the allegation that the suborner knew the facts to be false. *People* v. *Agnew*, *supra;* 70 C.J.S. 519, footnote 94.

■■ However, it is not alleged in the information that Raúl González Trinidad, the declarant, has acted wilfully, deliberately or with a criminal intent. Wilfullness is an essential element of perjury, and on several occasions it has been held that in an indictment for perjury or for subornation of perjury, the absence of that element impairs its sufficiency because it omits the allegation of criminal intent and wilfullness. 70 C.J.S. 517; 41 Am. Jur. 28; *People* v. *Ross*, 103 Cal. 425; *Gonzáles* v. *State*, 56 S. W. 2d 879; *State* v. *Wolfe*, 247 N. W. 407; *Pullen* v. *United States*, 164 F. 2d 756, 761; *cf. People* v. *Pellot*, 15 P.R.R. 423.

Notwithstanding the rulings in the cases cited, we are living an age which repudiates the fatal or inexorable need for the use of magic and exact words. From the mysticism of words we have advanced to the substance of actual facts and from precise exactness to intrinsic justice. That is why, even if an information charging perjury or subornation of perjury fails to use expressly the term used in the statute, "wilfully, deliberately or with criminal intent" but uses instead equivalent terms of similar import or meaning, from which the wilfullness or criminal intent may be reasonably implied and the facts alleged in the information reasonably denote or imply the existence of that mental element (wilfullness), then the information is valid and sufficient. 70 C.J.S. 517, 518; 41 Am. Jur. 28; *Rumely* v. *U. S.*, 293 Fed. 532, 547; *Holsman* v. *U. S.*, 248 Fed. 193; *Gatewood* v. *Commonwealth*, 285 S. W. 193; *State* v. *Bissell*, 170 Atl. 102; *State* v. *Lombardo*, 87 A. 2d 375, affirmed in 90 A. 2d 39.

Let us examine the elements of the term "wilfully." The first paragraph of § 559 of our Penal Code defines it as follows:

"1. 'Wilfully' Defined. The word 'wilfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to."

In the English text the phrase *"propósito o voluntad de cometer el acto"* is identified as "purpose or willingness to commit the act."

Concerning perjury and as stated in 70 C.J.S. 473, "wilfully" is used in the sense of "intentionally" *(People* v. *Darcy,* Cal., 139 P. 2d 118, *Moragón* v. *U. S.,* 187 F. 2d 79,) certiorari denied, 341 U. S. 932, deliberately, with evil intent and legal malice, with the consciousness and the knowledge that the statement was false, with the consciousness that he did not know that it was true, and with the intent that it should be received as a statement of what was true in fact. *People* v. *Tolmachoff, supra.* The term implies a purpose or willingness to commit the act, *People* v. *Von Tiedeman,* 120 Cal. 128, and is equivalent to the term "knowingly." *People* v. *Darcy, supra.* The term "deliberately" implies "meditation," in contrast with a statement made through inadvertence. *Welch* v. *State,* 157 S. W. 946. It means, voluntarily and with an evil intent, *(Felton* v. *U. S.,* 96 U. S. 699; *Roberts* v. *U. S.,* 126 Fed. 897) that the person knows what he is doing and intends to do what he is doing, and is a free agent; *Illinois Cent. Ry. Co.* v. *Leiner,* 67 N. E. 398; it means spontaneous or voluntary. *Crowell* v. *City of Riverside,* 126 Cal. App. 2d 566, 80 P. 2d 120; self-determined, voluntary or intentional. *Commonwealth* v. *O'Leary,* 79 A. 2d 789; and implies intention and knowledge. *Wolstein* v. *U. S.,* 80 F. 2d 779.

In *Leonard* v. *Superior Court,* 48 P. 2d 687 (California) the situation is fully clarified and is applicable to the circumstances of this case. The following is stated at page 688:

"While it appears that the word 'wilfully' was not used in the original indictment returned and was used in the amended indictment, it is clear there were allegations of component facts of like import in the original indictment which charged that a false oath was taken willfully. Pen. Code, §§ 952, 958. The original indictment charged that the defendants 'made and caused to be made' the report in question; and that they 'caused' it to be filed with the building and loan commissioner 'after they had verified it.' This imported a voluntary act intentionally done, and it was held in *People* v. *Davenport*, 13 Cal. App. 632, 643, 110 P. 318, 322, that 'when it is alleged that a person does an act it implies willfulness.' Furthermore, the original indictment pleaded knowledge on the part of the defendants of the falsity of the statements contained in the report of condition of the Union Building & Loan Association, and knowledge of the falsity of a statement is implied in 'willfully.' Deliberation, another ingredient of 'willfully', may also be assumed from the fact that false statements were verified under oath and subsequently filed with the building and loan commissioner, which in itself showed a continuing purpose. ...

"We are satisfied that an offense of perjury was pleaded, although imperfectly, and that no miscarriage of justice has or can result to the petitioner by the amended indictment..."

To that same effect see *People* v. *Agnew, supra.*

The *Leonard* and *Agnew* cases involved an amendment to the indictment by virtue of which the word "wilfullness" was supplied, and the then recent § 1008 of the Penal Code of California was applied to the effect that amendments to indictments are allowed where they do not affect the substantial rights of the defendant. That provision does not prevail in Puerto Rico. But what is relevant in the case at bar is the discussion contained in the two cases cited as to the sufficiency of the original information. In the information filed in this case the term "deliberately and wilfully" is not used in connection with the declarant Raúl González Trinidad. But it is alleged that he swore falsely before a judge of the former Municipal Court, from which it may be reasonably implied that his act was wilfull, and it is alleged that he did not know the facts to be true, from which it may be reasonably inferred

that the statement was made with an evil intent, and with knowledge of what he was doing. Deliberation also may be assumed from the facts alleged. Therefore, applying the doctrine of the *Leonard* and *Agnew* cases, the information filed in the instant case is legally sufficient. See, by analogy, the case of *U. S.* v. *Debrow*, 346 U. S. 374, decided by the Supreme Court of the United States on November 16, 1953, as to the sufficiency of an indictment for perjury.

Another of the errors assigned refers to the alleged insufficiency of the evidence to constitute the crime of perjury. After the evidence for the prosecution was introduced, the defendant filed a motion of peremptory acquittal which was overruled. Then, he introduced his own evidence, which finally was not believed by the judge who acted as a trier of fact and of law at the request of defendant himself. Independently of the effect of the introduction of the evidence for the defense, as a bar in itself to review the denial of the motion for peremptory acquittal, if from the whole evidence introduced the absence of any or some essential elements of the offense charged arises, the judgment should be reversed and the defendant's acquittal ordered, especially when the evidence for the defense has not cured that deficiency.

We can center our attention on two aspects of the evidence. To commit the offense of subornation of perjury, the two following elements must be proved, among others, in the light of the circumstances of this case:

1. That the defendant has procured another to make an affidavit. 70 C.J.S. 550; *People* v. *Nickell*, 70 P. 2d 659; *Commonwealth* v. *Billingsley*, 54 A. 2d 705.

2. That the accused has instigated a prospective witness to give perjured testimony. That, in turn, requires two elements.

(a) That upon making the instigation, the defendant knew or should have known, that when testifying subsequently, the person suborned, contrary to his oath, would testify, as true a fact which he knew to be false, or which he

did not know to be true. That is, the suborner should have known or believed that the witness would testify wilfully with knowledge of the falsity or without knowing it to be true. *Austin* v. *U. S.*, 19 F. 2d 127; *Coyne* v. *People*, 14 N. E. 668; *State* v. *Gleason*, 40 P. 2d 222; *Boren* v. *U. S.*, 144 Fed. 801. It should be proved that the party procuring the witness to make statements, knew or should have known that the witness knew them to be false or did not know them to be true, that is, he should have known that perjury was going to be committed, that the declarant would testify wilfully. *People* v. *Ross*, *supra*. If the person charged with subornation knew that the testimony would be false, but did not know that the witness would testify to a fact knowing it to be false, he cannot be convicted of subornation of perjury. 41 Am. Jur. 41; *State* v. *Wilhelm*, 219 Pac. 510; *Conn.* v. *Commonwealth*, 27 S. W. 2d 702.

(*b*) The former refers to the element of criminal intention on the part of the person charged with subornation. But it must also be proved that, as a matter of fact, the defendant procured the witness to testify *without the latter knowing the facts to be true* or knowing *them to be false*. Subornation refers not only to acting but also as to acting wilfully. The declarant must be *suborned* to testify contrary to his oath, his oath being to the effect that he knew that the facts were true. This is so because the act of subornation in itself should refer to all the elements of perjury.

The evidence introduced in this case relevant to the elements which we have just pointed out consisted of the statement of the witness suborned, Raúl González Trinidad, an Internal Revenue Agent. He testified in brief to the following:

That the defendant, another Internal Revenue Agent, handed him a written paper with the description of the house which was to be the object of the search; that there was clandestine rum in that house for sale without the internal revenue stamps affixed; that the defendant handed him the

paper in order that he would make a search; that he would find the rum in a specific part of the house; that the defendant told him that clandestine rum was sold at the house; that he told him how to reach the house; that he told him to make the search; that the declarant did not know the facts to be true, and did not investigate them at all, but that, this notwithstanding, the declarant made an affidavit before the judge of the former Municipal Court as to the facts informed by the defendant and that in the affidavit the declarant González Trinidad stated that he knew personally that those facts were true, which was false, since he did not know those facts to be true; that supported by the affidavit a search warrant was issued and the house was searched, and rum with no internal revenue stamps affixed was found in the place mentioned;[2] that the office routine where the declarant and the defendant worked as internal revenue agents was such that if another agent gave a "confidential report," as in the instant case, the declarant agent did not investigate the matter but prepared and presented the affidavit pursuant to "confidential reports," even if the declarant did not know the facts to be true.

This evidence was sufficient to show that the defendant induced Raúl González Trinidad to make an affidavit before

---

[2] There was proof that the defendant and his father-in-law carried out a conspiracy, trick or "frame-up" (as testified) to the effect that in order to force the tenant of the house to vacate the premises, upon its being searched, the father-in-law, owner of the house, surreptitiously placed in the house certain containers with rum and no stamps. This naturally deserves certain qualifications, but does not constitute, in itself, the offense of subornation of perjury. Incidentally, it could be alleged that perjury was not committed because, after all, what was stated in the affidavit as to the existence of clandestine rum in the house, was not false. Generally, the facts set forth in the affidavit must be false in order to be perjured testimony. But there can be perjury as to a true fact, if the defendant falsely states under oath that he knows the fact to be true, without actually knowing it, 70 C.J.S. 463, 464, perjury in such cases resting on the false statement as to his own knowledge and belief on the subject. *Davis* v. *State*, 67 S. E. 839; *Hecks* v. *State*, 21 S. E. 2d 119. What § 117 of our Penal Code states is that every person who having taken an oath that he will testify truly, states as true any material matter which he knows to be false, (or not knowing it to be true under § 122) shall be guilty of perjury.

a judge. The evidence was to the effect that the defendant induced González Trinidad to search the house. A search warrant entails, necessarily, and as a precondition, the making of an affidavit, and the defendant, who was an Internal Revenue Agent, knew it. Therefore, the affidavit is implicit in the search warrant, and to induce him to make the search is equivalent to inducing him to make an affidavit.

However, the evidence as a whole did not show that defendant had procured González Trinidad to make an affidavit *without knowing the facts to be true.* The defendant did not induce González Trinidad not to investigate the facts and to make the affidavit without investigating the facts, so as to learn of the falsity or truth of the facts at the time that he made his affidavit. This notwithstanding, it is alleged that there was evidence to the effect that the practice of the Internal Revenue agents was to make searches with the corresponding affidavits, without the declarant investigating the facts when the information was furnished by other internal revenue agents and that, therefore, an instigation to make an affidavit, was equivalent to an instigation to swear under oath without investigating the facts according to the usual practice. But we must not assume that González Trinidad followed that illegal practice and failed to fulfill his duty. We must not assume that the administrative practice sanctioned by the corresponding officials was that the agents commit perjury in making affidavits supporting the search. That is, the defendant had no right to assume that González Trinidad would fail to investigate the facts, that is, he could not have known that González Trinidad was unacquainted with the truth of the facts upon making his affidavit. Naturally, the instigation as to some element of perjury might, generally, be reasonably inferred from the evidence in a particular case. But in the case at bar, the inference that an internal revenue agent would fail to inquire into facts before making an affidavit, would be unreasonable. The absence of a concrete and specific instigation should not be supplied

by an inference based on an illegal practice. It could be alleged that perjury in itself is always an illegal and unreasonable practice and that if we take the view pointed out, the commission of subornation of perjury could never be proved through reasonable inferences. To furnish false information to a declarant or a potential witness and to procure him to testify those false facts could be subornation of perjury when both persons know the facts stated to be false, and the suborner is conscious that the declarant knows the falsity. See the cases where under such circumstances the element of instigation was considered proved: *State* v. *Bixby*, 177 P. 2d 689; *State* v. *Ruskin*, 159 N. E. 568; *Commonwealth* v. *Billingsley*, *supra*; *State* v. *Gleason*, 40 P. 2d 222, and *People* v. *Nickell*, California, 70 P. 2d 659. It would then be unnecessary to prove a concrete and specific instigation to the effect that the declarant would not investigate the facts and testify without knowing them to be true, since in the case pointed out, both are conscious of their falsity, and the suborner knows that the declarant is aware of their falsity, a further investigation being unnecessary. But in a case like the one at bar, where the declarant does not know the specific falsity of the facts, there must be concrete proof that the suborner procured him to testify without knowing the facts to be true, that is, to testify without investigating. That proof could be supplied by evidence showing that it is common practice to testify without inquiring into the truth of the facts, since then the person charged with subornation may anticipate that the witness or affiant would testify without making an inquiry. The practice of agents, in some cases, of making affidavits to support a search warrant, without investigating the truth of the facts, must not be considered as the common practice which supplies the omission of a concrete and specific instigation as to that particular. True enough, it is difficult in practice to prove that such illegal behavior is generally observed, but we should not forget the previously cited rule that to establish the commission of

subornation of perjury it must be proved, by direct evidence or reasonable inferences, that the declarant has been procured to testify without knowing the facts to be true, or knowing the facts to be false.

█ A peculiar aspect of this case is that, as we indicated in footnote 2, the defendant knew that when the house in question was searched, they would find clandestine rum therein, as a matter of fact and objective reality, although that reality had been artificially and subreptitiously created. So that when the defendant furnished González Trinidad with the information he was not furnishing information which was objectively false. That is, he was not instigating González Trinidad to testify falsely. Then it would be necessary to prove subornation of perjury under another form of the crime, that is, that the facts stated being true, the defendant must have *procured* González Trinidad to testify *without knowing the facts to be true.* Then, the subornation did not have to refer to his false testimony but that he averred under oath that he knew a fact to be true without actually knowing that it was true, that is, the subornation would not refer to the falsity of the fact but to the falsity of the oath. The evidence should have shown that the defendant procured González Trinidad to give a false oath, not as to the facts in themselves, but as to his belief, that is, as to his personal knowledge of the facts. This was not proved in the instant case beyond a reasonable doubt.

Since the evidence introduced to show the commission of subornation of perjury is insufficient, the judgment appealed from will be reversed and judgment rendered ordering defendant's acquittal.

Mr. Justice Pérez Pimentel did not participate in this case.